### HILLS *vs.* DEY and others.

Where *partition* was made by commissioners, in a partition suit between ten-ants in common, of property on which there were mills: one mill being sit-uated below the other on a stream running through the premises, and the commissioners allotted to one of the parties a certain portion of the premi-ses on which the lower mill was situated, *together with all the mills, ma-chinery, buildings, out houses, water rights and privileges belonging to the same,* and allotted to the other party the residue of the premises; and at the time of the partition and long before, the water raised by the dam of the *lower mill* flowed a portion of the premises on which the *upper mill* was sit-uated: *It was held* that by the partition the party to whom the lower mill was allotted, acquired not only the premises particularly described as allot-ted to him, but also the *right to flow the lands* of the other party, in the same manner and to the same extent as they were flowed previous to the partition.

THIS was an action on the case tried at the Seneca cir-cuit in November, 1833, before the Hon. DANIEL MOSELEY, one of the circuit judges.

The parties are owners of mills on the Seneca river, the de-fendants' mill being situate *below* that of the plaintiff. The suit was brought to recover damages for the flowing of the wheels of the plaintiff's mill, by means of a dam erected by the defendants. On the trial it appeared that in 1825, a *judg-ment in partition* was rendered between *Sam'l L. Gouverneur,*

plaintiff, and *Wilhelmus Mynderse* and others defendants, whereby certain premises particularly described, *"together with all the mill-privileges and water-rights* attached to and belonging to that part of the state's 100 acres above conveyed," were allotted to *Mynderse ;* and certain other premises, adjoining and below the premises above described, *"together with all the mills, machinery, buildings, outhouses, water-rights and privileges* belonging to all that part of the state's 100 acres lying easterly of the west line of village lot No. 170, were allotted to *Gouverneur* and others. The title of that portion of the premises allotted to *Mynderse* which adjoined the property of the defendants, was shown to be in the plaintiff by sundry mesne conveyances, (the validity of the last deed in the chain of title was disputed, but the question is unnecessary to be stated, as it was not passed upon by the court ; the rights of the parties being adjudged upon the assumption that the plaintiff had title,) and it was conceded that the defendants had succeeded to the title of *Gouverneur* and others. The plaintiff proved that the defendants, since they had succeeded to the possession of the property, had erected a wing dam, by means whereof they flowed the wheels of the plaintiff's mill and injured him in the enjoyment of his property. Previous to 1825, there was a saw mill on the site where the plaintiff's mill now stands. On the part of the defendants, it was shown that in 1825 and long previous, there was a mill on the premises now owned by the defendants, on the same site with their present mills, and that the water was turned to the latter mill by means of a wing dam, which however was not as perfect as the dam erected by the defendants ; and they proved by many witnesses that the water in the river was not raised higher since the erection of their dam than it was before—as to this last point, however, there was a contrariety of evidence. The judge instructed the jury, in substance, that if they should find that the defendants and those under whom they claimed had been in the use and occupation of the mill with its dam, for 20 years previous to 1825, flowing the water as far above the dividing line of the parties as it now flowed, that the defendants would be entitled to their verdict, otherwise they must find for the plaintiff.

The jury found for the defendants. The plaintiff moved for a new trial.

*J. Porter,* for the plaintiff, insisted that by the partition of 1825, *Mynderse,* to whom the premises now owned by the plaintiff were allotted, became seized of all the privileges and appurtenances appertaining to the premises; among those were the water privileges belonging to the premises and the right to have the water flow from the same without obstruction in its natural course. The premises were allotted to him without the reservation of any privileges, for the benefit of the remaining portion of the premises of which partition was made. Of course he had the right to avail himself of all natural advantages attached to the property assigned to him, 4 *Mason,* 397 ; and the plaintiff having succeeded to his title, may insist upon the same right. The defendants showed no title by grant or prescription. A right in one to flow the lands of another, is an incorporeal hereditament, and can pass only by grant. 4 *Johns. R.* 81. Here no grant is pretended, except the general words following the description of the premises allotted by the judgment in partition to *Gouverneur,* which are not enough, as an incorporeal right cannot be created by inference or construction; it must be by express words. Nor can the defendants shelter themselves under a title by prescription. There cannot be such title, except where a grant may be presumed, and it cannot be presumed unless the enjoyment has been adverse to the title of the claimant. 9 *Serg. & Rawle,* 26. 6 *Cowen,* 289. Here the enjoyment was in accordance with the title of the plaintiff. Besides, how can there be a right by prescription ? Sufficient time has not elapsed since the partition to set up such claim, and previous thereto *Gouverneur* and the others under whom the defendants claim, being owners and holding the property as *tenants in common* with Mynderse, could not set up a right by prescription in their own property. 14 *Mass. R.* 53. 3 *Mason,* 276. *Popham,* 166. The judge therefore erred in instructing the jury that they might find a right by prescription in the defendants.

*J. A. Spencer,* for the defendants, contended that the nature of the property and the circumstances under which the partition was made, must be taken into consideration in giving a construction to the judgment of partition. *Mynderse* and *Gouverneur* and the other owners of the property were tenants in common. On that portion of the property allotted to Gouverneur was a mill which had been in operation for many years, and the dam by means of which it was supplied with water flowed or set back the water upon the portion of the property allotted to Mynderse. In assigning to *Gouverneur* the share which he was to hold in severalty, not only the premises particularly described were given to him, but also " all the mills, machinery, buildings, out-houses, water-rights and privileges belonging" to the same. The same effect must be given to the judgment of partition, as if Mynderse had by deed conveyed to Gouverneur the premises allotted to the latter, *with the water-rights* and *privileges* appertaining thereto ; and had the conveyance been by deed, in language thus broad and comprehensive, it could not have been doubted that the right to flow lands as *used* at the time of the conveyance, would have passed. The jury found that the defendants had not raised the water higher, or that it set back further than it did previous to the partition, and their verdict upon this point is conclusive. The counsel for the defendants also insisted that the defendants were protected by the doctrine of prescription, and in support of such position cited 6 *East,* 214; 3 *Caines,* 307 ; 10 *Johns. R.* 236 ; 17 *id.* 211 ; 7 *Cowen,* 266 ; 10 *Wendell,* 167.

*By the Court,* Nelson, J. The only question presented, involving the merits of this case, is whether the judgment in partition between Gouverneur and Mynderse in any way affected the privileges belonging to and enjoyed by the occupants of the mill now owned by the defendants, and which had been so used for some twenty-five years. When the wing dam was originally erected, both the mill sites now belonging to the parties in controversy, were owned by the same person or persons, and of course they could fix its height at discretion. It had been used at a given height by the parties down to the time when partition was made. Beyond all

dispute, if the original owners before partition had sold the lower mills and privileges thereunto belonging, describing the premises according to the judgment of partition, the purchaser would have acquired a right to the enjoyment of them undiminished. The grantors would not have been permitted to contest the right (which they had thus sold and conveyed for value,) to set water back over the boundary line, if the dam existing at the time of the sale produced that effect. The whole value of the mill site might depend upon the enjoyment of such privilege ; and the pretence against the use of it would be just as well founded as if it was of less consequence. The case in its present aspect is equally decisive for the defendants. The commissioners, in making partition of these mills, together with their privileges, we are to presume, intended to set them apart to the respective tenants, with the appurtenances as then belonging to them, and as they were then enjoyed ; otherwise they would have merely allotted to the several tenants specific portions of the property without reference to the *water-rights* and *privileges* belonging to the portions of the property thus assigned, and their intent to do so would have appeared in the record of judgment. Nothing of this kind appears ; on the contrary, the language used allots to each these *privileges* in full force, by the most apt and skilful terms that could be employed, and the judgment of the court confirms the doings of the commissioners.

I consider the right of the defendants to keep up their dam at the height at which it has been so long maintained, as founded upon a title equivalent to an express grant by persons competent to make it. It is therefore unimportant to examine the question how far it could be sustained by the doctrine of prescription.

New trial denied.