1843.

Smith
v.
Smith.

## SMITH vs. SMITH.

Partition between tenants in common of real property is a matter of right, by the common law as well as by the statute, where both parties cannot, or either of them will not, consent to hold and use such property in common.

Where the sale as well as the actual partition of the premises held in common, will be greatly prejudicial to the owners of such premises, as compared with the use thereof in common, an actual partition thereof must be made; unless the injury to the interests of the owners collectively, in reference to the rights of each in the common property will be much greater by an actual partition than by a sale.

The words "great prejudice," as used in the revised statutes, in relation to partition, will not justify a decree of sale of the property held in common, where the aggregate amount of the benefits to the parties from a sale, instead of an actual partition of the premises, will be small in reference to the value of the property of which a partition or sale is sought.

Where the real estate of which partition is sought consists of a mill dam and the lands overflowed by the mill pond, constituting the water power which is necessary for the use of various mills which belong in severalty to the respective tenants in common of such dam and pond, an actual partition of the water power should be made, instead of a sale thereof, if the whole water power, in connection with the mill property held in severalty by either party, would not be worth more than the same water power equally divided, by a proper partition thereof, the one half to be used with the mills of each, in the hands of different proprietors.

The commissioners appointed to make partition of real property, consisting of a mill dam and mill pond, creating the water power which supplies the mills held in severalty by the tenants in common of such mill and mill pond, may divide the mill dam, and the lands under the same and under the waters of the pond, and may make such provision for keeping the different portions of the dam and of the water gates and flumes in repair, and such regulations for the use of the water power, which is not capable of actual partition without a destruction of its value, as the parties themselves might make by a partition deed of the same property.

In making partition of real property, the commissioners may assign a portion of the premises, held in common, to one of the parties, charged with a servitude, or easement, for the benefit of another party, to whom a distinct portion of the premises is assigned in severalty.

Various modes stated by the chancellor, in which a partition of a mill dam and mill pond and water power, held by tenants in common, may be legally made, without a sale.

November 21.   THIS was an appeal by the defendant from so much of the decree of the late assistant vice chancellor of the first circuit, in a partition suit, as adjudged that the premises were so circumstanced that a partition thereof could not be

made, without great prejudice to the owners of the same, and directed that a decree be entered for the sale thereof, without further notice to the defendant, upon the coming in of the master's report as to liens ; and from so much of the decree as directed that neither party should have any costs as against the other, in regard to other matters litigated in the cause, including the costs of all the testimony taken in the suit. The undisputed facts in the case, so far as related to the question of partition, were as follows : Previous to the 10th of October, 1833, M. Smith, the father of both parties, was the owner of the dam and pond and of the land under the same, of which a partition and sale was sought by the complainant's bill. And he owned also a grist mill, a fulling mill with two carding machines and a picker, and a saw mill with a bark mill attached to it, situated upon other parts of his land immediately below the dam ; all which mills and machinery were propelled by water power from the waters of the pond above the dam, by means of three flumes which passed through different places in the dam ; one of which flumes conveyed the water to the grist mill, another to the fulling mill, carding machines and picker, and the third to the saw mill and bark mill. On the day before stated, M. Smith the father, in pursuance of an agreement with his two sons to that effect, conveyed to his son Parmenus, the complainant, by metes and bounds, the lands upon which the grist mill was situated, and other lands, adjoining and bounded by the dam ; together with the equal undivided half part of the dam and the stream, pond, and pondage grounds, adjacent to the lands conveyed in severalty ; describing the same by metes and bounds. And at the same time, and for a consideration of the same amount, he conveyed to his son Samuel L., the defendant, in severalty, and by metes and bounds, the lands on which the other mills and machinery were situated, and which conveyance included the lands, below the dam, through which the two flumes supplying such mills and machinery were constructed, and other lands adjacent ; and also the other equal undivided half part of

**1843.**

Smith
v.
Smith.

the dam, and the stream, pond and pondage ground, describing the same in the same words as in the other deed. After these conveyances were given, the complainant rebuilt his grist mill ; and, as the defendant insisted, so constructed it as to draw off more water from the pond, in dry seasons, than was drawn off by the old mill. And the defendant took down his fulling mill, &c. and erected in the place of it another building, which was used alternately as a grist mill with one run of stones, and as a fulling mill and carding machine ; but which, as the defendant insisted, did not require more water power than the old mill, in the place of which it was erected. The bill and the answer charged various acts of injustice, against the defendant and the complainant, respectively, in relation to the use of the water power, and as to the quantity of water used to propel the mills of each party ; which questions were put in issue by the pleadings, and as to which issues testimony was taken on both sides. The defendant also averred and insisted, in his answer, that neither the mills of the defendant, nor the grist mill of the complainant, could be worked or used without the waters of the pond, and that such pond was not susceptible of a division into two parts ; and that it could not be sold, so as to deprive either of the use of the water, without great prejudice. And he set up in his answer an alleged agreement, between himself and the complainant, at the time of the purchase, that so long as their respective mills should be holden in severalty, the pond should continue and be owned in common ; and that a particular mode of using the water should be adopted, so that neither should draw it down below a specified point. But no evidence of such an agreement was produced at the hearing.

*J. Dikeman & J. Rhoades,* for the appellant.

*W. Silliman,* for the respondent.

THE CHANCELLOR. As neither party has appealed from that part of the decree which declares the rights of the

complainant and defendant, as tenants in common, in equal proportions, of the mill dam, stream, pond and pondage lands, and premises described in the first clause of the decree, the question cannot arise here, whether each party took his conveyance of the undivided half of the dam and the land under the waters of the pond, subject to the right of the other to use the water, for the mill or mills conveyed to him in severalty, to the same extent and in the same manner as it had been before used. For this declaration of the equal rights of the parties, in the part of the decree not appealed from, necessarily supposes that each is entitled to an absolute equality of right in the use of the water, as well as of every other beneficial use of which the property held in common is susceptible. And I am inclined to think that this was the legal effect of the conveyances to these parties respectively, as far as the terms of those conveyances can be ascertained from the pleadings in this case. For it appears from the pleadings, that each deed was a simple conveyance, of a portion of the grantor's land in severalty, by metes and bounds, without reference to the mills thereon, or the uses to which it was then applied, or to any easement, or other appurtenant; and of an equal undivided half of the dam and pond, &c. If such was the language of those conveyances, the parties had a perfect equality of right in the premises conveyed to them in common. The questions then are, Had the complainant a right to a partition of this common property? And if so, how should that partition be made?

Upon the first question I think that partition between tenants in common of real property, in this state, is a matter of right, by the common law as well as by the statute, where both parties cannot, or either of them will not, consent to hold and use such property in common. I think the cases referred to by the assistant vice chancellor fully sustain his decision upon that question, as to the common law right. (*Baring* v. *Nash*, 1 *Ves. & Beame*, 554. *Parker* v. *Gerard, Amb.* 236. *Harrison* v. *Willard*, 3 *Fairf. Rep.* 146. *Allnat on Part.* 4, 78, 87. *Turner* v. *Morgan*, 8

*Ves.* 143.) The case referred to by the counsel for the appellant, from the state of Massachusetts, (*Miller* v. *Miller*, 13 *Pick. Rep.* 236,) is not in conflict with the authorities above cited. There a saw mill and the ground on which it stood, together with the stream, dam, logways and appurtenances, had been conveyed to two persons as tenants in common ; and the mill having gone to decay, the use of the water of the dam and pond had been rented to the owners of a furnace below. One of the tenants in common afterwards applied for the partition of the dam and water only ; which dam and water the court said was a mere incident to the mill privilege belonging to the tenants in common below, and that one could not be partitioned without the other to which it was appurtenant. The cases of *Conant* v. *Smith*, (1 *Aiken's Rep.* 67,) and of *Brown* v. *Turner*, (*Idem*, 350,) appear to have been decided upon a local statute, which probably gave some discretionary power to the court upon a petition for partition ; and without reference to the common law right of the parties to apply to the law side of the court by a writ of partition. The provisions of our own statute, however, are strictly in accordance with the common law right in this respect. The first section authorizes a person holding property in common with others to apply to the court for partition. And after prescribing the form of the proceedings, and the manner of ascertaining the rights of the parties, the statute is imperative, that the court shall determine the rights of the parties in the lands, tenements, or hereditaments, of which partition is sought, and shall give judgment that partition be made &c. (2 *R. S.* 321, § 23. *Idem*, 329, § 80.)

I think the assistant vice chancellor erred, however, in supposing that the proofs in this case required, or authorized, a decree for the sale of the water power of which partition was sought. The statute only authorizes a sale of the property where it appears to this court, by the report of a master or otherwise, that the premises are so circumstanced that a partition thereof cannot be made without great prejudice to the owners. (2 *R. S.* 330, § 81.)

I do not think that the testimony which was before the court brought this case even within the literal reading of the statute. For, from the peculiar situation of this property, I am inclined to think a proper partition thereof would be beneficial to both parties; rather than to permit it to remain in common, as it now does, without any provision for the exercise of their common rights in such a manner as to prevent difficulties between them. The statute, however, refers to comparative prejudice, to the owners, between an actual partition and a sale of the property. So that if either a partition or a sale will be greatly prejudicial to the owners, compared with the use of the property in common, still an actual partition must be made; unless the injury to the interests of the owners collectively, in reference to the rights of each in the common property, will be much greater by an actual partition than by a sale. For the words *great prejudice* as used in the statute will not justify a decree of sale, where the aggregate amount of the benefits to the parties from a sale, instead of an actual partition, will be small, in reference to the value of the property of which a partition or sale is sought.

Here the proof shows that the property is of little or no value except in connection with the mill property of one or both of these parties. Of course no one but the parties would bid upon it, if it was sold under the direction of a master, except with a view to sell it again to one or both of them, or to connect it with the mills of one or both, by a purchase of the mills from them. And if the whole water power, in connection with the mill property held in severalty by either of these parties, will not be worth more than the same water power equally divided by a proper partition thereof, the one half to be used with the mills of each in the hands of different persons, no benefit will result from a sale instead of such a partition. The father of the parties, I believe, is the only witness who has stated the comparative values of each part of the mill property, with the use of one half of the water power, or with the whole or none of it. He thinks the mills of each of the parties,

with the lands conveyed therewith, are worth $1500, with the one half of the water power, and that without any of it they would not be worth more than $500 ; and that if the whole water power, instead of the half, is given to either party, his property will be increased $1000. According to this testimony, which is the most favorable to the respondent, either party could afford to bid $2000 for the water power. For the one who became the purchaser at that price would be entitled to one half of the purchase money ; so that by adding one thousand dollars to the whole property held under the deed from his father he would have the whole water power, and would increase the value of his mill site and water power to $2500. In other words, he would be just as well off in point of property as if the use of one half the water had been apportioned to him by a proper partition. And the one who lost the water power would, in addition to his mill site without water, which his father values at $500, have one thousand dollars for his half of the bid. But Clark estimates both the value of the mills, and the difference in their value by the loss of the water power, as being much greater. He says he would give for the complainant's mill with the use of the water $3000, and without such use not more than a quarter of that amount ; and so of the defendant's mills. And DeMott, who appears to be an experienced as well as an intelligent mill owner, thinks that neither of the mills, that is the mill site and the buildings of neither of the parties, would be worth a quarter as much without the use of the water as with it. From all this testimony, therefore, I infer that it would diminish the property of both parties, in the aggregate, to have a sale instead of an actual partition. For no one could afford to give double the amount for the whole water power, which the one half of it would be worth to each of these parties ; unless he should be able to sell it immediately back again to the parties respectively in severalty.

Nor does there appear from the testimony to be any difficulty in making an actual and equitable partition of the water power in controversey, so as to be mutually benefi-

cial to each. For it is not necessary to divide the waters of the pond by horizontal lines. The land under the water and the dam may be thus divided, by metes and bounds ; and one part thereof may be assigned to each party, subject to the servitude and charge of keeping up and repairing the dam on that part, by the one to whom it is assigned, for the use of the other, as well as for his own benefit ; and the right to the use of the half, or of any other portion, of the waters of the pond, which are thus preserved, may be assigned to the parties respectively, to be used in such a manner as the commissioners, in their report of the partition, may direct. And if the present situation of the flumes, and of the gates, cannot be altered without injury to the mills, so as to prevent one party from obtaining or using more than his equal half of the water, the statute has wisely provided that a sum may be decreed to the other party for owelty of partition. (2 R. S. 330, § 83.) So an equitable partition of the water may be made, by allowing the complainant at all times to have sufficient water, to be drawn through his present gateway, or through such other gateway as may be hereafter constructed in lieu of it of the same capacity and depth, to work his present machinery for so long a time as may be necessary whenever he may have any grinding to do, and by requiring the defendant to shut down his gates whenever the water gets down to a particular mark, to be designated in the report for that purpose, and keeping them shut until it rises to a certain other point ; and awarding to the defendant a compensation in money, as an equivalent for such a special privilege in the use of the water. Or the commissioners may give a similar privilege to the defendant, as to both or either of his mills, and may award a compensation to be paid by him to the complainant, as an equivalent, to equalize the partition. So they may direct the water to be used in the way suggested by the witnesses, by fixing a monument or mark in the pond in a permanent situation, and allowing both parties to draw the water from the pond, for the use of their mills, through the present gateways, or through others

of the same depth and construction, until the water is drawn down to a specified mark or point upon the monument; and directing that both parties shall then shut down their gates until the water has risen in the pond to another specified point or mark upon such monument. And if one party will, in the ordinary use of his mills and his present gateways, in the manner suggested, get more than his fair proportion of the water, either in quantity or in value, taking one portion of the year with another, the commissioners may, in their report, direct such alterations to be made in the depth or capacities of such gateways as will render the use of the water of the pond, in that manner, equal between the parties. Or if such alterations cannot be made without diminishing the head and quantity of water required for the propelling of the machinery of the mill or mills of either party, they may award a sum of money to be paid by one party to the other for owelty of partition. In short, the commissioners who are to make the partition may divide the dam and the lands under the water, and may make such provisions for keeping the different portions of the dam, and the waste gates and flumes in the same in repair, and such regulations for the use of the water power which is not capable of actual partition without a destruction of its value, as the parties might make by a partition deed between themselves, and by agreeing for a compensation to be paid by one party to the other if necessary, so as to make that partition perfectly equal; so far as human judgment is capable of producing equality in such a case.

That such is the law, in connection with the provision of the revised statutes authorizing this court, where an equal partition of the property cannot be made without prejudice to the rights and interests of some of the parties, to decree compensation to be made by the one to the other to produce such equality, it is only necessary to refer to a few of the leading cases on this subject.

In the case of *Hill* v. *Dey*, (14 *Wend. Rep.* 204,) it appeared that the commissioners in partition had set off to one of the parties one part of the premises, by metes and bounds,

and another part of the premises to the other in the same way ; the whole embracing two mills upon the same stream, the one below the other. But in their report, in addition to the land itself on which the lower mill was situated, they had given to the party to whom that part of the land was set off, the easement or right to flow back the water upon the land assigned to the other, in the same manner and to the same extent that such water had been flowed back previous to the partition. It is true the question there arose upon the construction of the report itself. But the decision of the court recognized the principle that the commissioners in partition might assign one part of the premises to a party, charged with a servitude or easement for the benefit of another party, to whom a distinct portion of the land was assigned by metes and bounds. And in the case of *Morrill* v. *Morrill*, (5 *New Hamp. Rep.* 134,) the committee appointed by the court to make partition of a mill site and mill privileges, assigned to some of the parties distinct portions of the premises by metes and bounds, with the right of taking from the river within the limits of the lands assigned to them respectively, so much water as would flow through a gateway of certain prescribed dimensions, together with a passage way or water course through other portions of the premises not assigned to them. And the court sustained the report of the committee ; distinctly placing their decision upon the principles of the common law upon the subject.

*Warren* v. *Baynes*, (2 *Blunt's Amb.* 589,) decided by Lord Hardwick in 1750, is another case, in which such a mode of making partition of property, the principal value of which consisted in the use of water, was adopted. An easement in the land was leased to the New River Company, at an annual rent for the quantity conveyed in each pipe, laid down by the company ; with the privilege of laying down other pipes at the same rent. And there were also two water conduits belonging to the parties in the partition suit, one of which was used for a cold bath establishment, and the water in the other conduit was run-

ning to waste. And in decreeing a partition of the property between the owners of the water conduits and of the lands through which the pipes of the New River Company were laid, &c., and directing the mode of enjoyment of the parts set off to the owners of the premises in severalty, Lord Hardwick directed that the rents payable in respect of the water pipes then laid by the company should be put into one lot, and the other part of the estate of equal value be put into another lot, and that in case the company should lay any new pipes which should run partly through the land which should be allotted to the plaintiff and partly through that allotted to the defendant, the rent for such new pipes should be apportioned between the parties according to their respective quantities of the land through which the same should run. And that the conduit in which the water run to waste should be allotted to one party, and the other conduit with the cold bath to the other; and that the party to whom the first conduit was allotted should not convert that conduit into a cold bath, so as to come in competition with the cold bath allotted to the other party. (*See also Clarendon* v. *Hornby*, 1 *Peer Wms. Rep.* 446 ; *Lister* v. *Lister,* 3 *Younge & Coll. Exc. Rep.* 540.)

I see no good grounds for questioning the decision of the assistant vice chancellor in respect to costs. The complainant in his bill claimed a small piece of land which did not belong to the parties in common ; and he made an unfounded charge against the defendant, as to his having agreed not to erect any mill, on the part of the premises conveyed to him, which should interfere or come in competition with the business of the complainant. But the defendant on the other hand set up, in his answer, an agreement that the dam and pond should be forever held in common for the use of the mills of both parties, so long as such mills should be holden in severalty, and as to a particular mode of using the water. Which allegation in the answer is equally unsustained by proof. There was no impropriety, therefore, in leaving both parties to bear their own costs in relation to those matters, and as to the proofs, which re-

lated to matters in controversy between them not affect-
ing the right to partition. Again; as the rights of the
parties in the property are equal, and each must bear an
equal share of the costs necessary to effect a severance of
the property which they cannot agree to divide amicably
between themselves, it could make very little difference
whether the particular portion of the costs thus disposed
of by the decree of the assistant vice chancellor should be
left to be paid by the respective parties, in this stage of the
cause, or should be ordered to abide the event of the suit
as a part of the general costs therein. That part of the
decree must therefore be affirmed. But the residue of the
decree which is appealed from must be reversed, without
costs to either party on the appeal. And a decree must be
entered for the appointment of commissioners, with direc-
tions to them to proceed to a partition of the property, be-
tween the parties, upon some equitable principles, as above
suggested, and in such manner as to do as little injury
as practicable to either party. But before such a de-
cree can be settled and entered, the counsel for the respec-
tive parties must either agree upon some respectable and
intelligent freeholders, residing in the county of Queens, to
be appointed commissioners ; or each must serve upon the
other a list of the names and residences of proper persons
to be named in the decree as commissioners, so that ob-
jections may be made to them if any such objections exist.