TRACY DEVELOPMENT COMPANY, Respondent, *v.* CHARLES
    D. BECKER et al., Defendants, and THE PEOPLE OF
    THE STATE OF NEW YORK, Appellant.

TRACY DEVELOPMENT COMPANY, Respondent, *v.* CHARLES
    D. BECKER et al., Defendants, and COLUMBIA DIS-
    TILLING COMPANY et al., Appellants.

Water and watercourses — action of partition not appropriate
remedy where the subject-matter is water in which parties have
interest appurtenant to the lands which they own in severalty —
pleading — when complaint therein fails to state a cause of action
against the state or any of the parties.

1. The action of partition authorized by the Code of Civil Pro-
cedure (§ 1532) is not an appropriate remedy where the subject-
matter is the right to the use of waters in which the parties have
an interest as appurtenant to lands which they hold in severalty.

2. A complaint under which it is sought to obtain a judgment
defining, regulating and limiting interests of the parties to the
action in such water rights does not state a cause of action in
partition and cannot be maintained against the state as a party.
(Code Civ. Pro. § 1594.)

3. Where such a complaint does not allege any wrongful act on
the part of any defendant, but appears to be brought to obtain a
judicial construction of the title deeds and decrees under which
the several parties hold their land and water rights, it does not
state a cause of action which will justify the intervention of a court
of equity. (*Hanson* v. *Willard*, 12 Maine, 142; *Smith* v. *Smith*, 10
Paige, 470, 471, distinguished.)

*Tracy Development Co.* v. *Becker*, 160 App. Div. 914, reversed.

*Tracy Development Co.* v. *Columbia Distilling Co.*, 160 App. Div.
914, reversed.

(Argued June 8, 1914; decided September 29, 1914.)

APPEAL, by permission, from orders of the Appellate
Division of the Supreme Court in the fourth judicial
department, entered January 8, 1914, which affirmed
interlocutory judgments of Special Term overruling
separate demurrers to the same complaint.

These appeals come to this court upon two separate

orders of the Appellate Division affirming two interlocutory judgments overruling two separate demurrers to the same complaint. The plaintiff asserts that the action is for the partition of lands and their appurtenances under the Code of Civil Procedure, and it is upon this theory that the state has been made a party defendant. (Code Civ. Pro. sec. 1594.) The state demurs to the complaint on the grounds: *First*, that the court has not jurisdiction of the defendant, or of the person of the defendant. *Fourth.* That the complaint does not state facts sufficient to constitute a cause of action. Upon this demurrer the Appellate Division has certified to this court the following questions:

"1. Does the complaint set forth facts sufficient to constitute a cause of action for partition of real property within the meaning of section 1594 of the Code of Civil Procedure?

"2. Does the complaint state facts sufficient to constitute a cause of action?

"3. Has the court jurisdiction of the defendant, the People of the State of New York?

"4. Has this court jurisdiction of the subject of the action?"

The defendants, Columbia Distilling Company and Industrial Distilling Company, demur to the complaint on the grounds: *First*, "that the court has no jurisdiction of the subject of the action;" *second*, "that the complaint does not state facts sufficient to constitute a cause of action," and upon this demurrer the Appellate Division has certified to this court the same questions propounded upon the demurrer of the state.

The action arises out of certain water rights or privileges in what is known as the Seneca river outlet in the village of Waterloo, and the subjoined map, supplemented by the complaint, presents a fuller description of the *locus in quo*. The material allegations of the complaint are discussed in the opinion.

*Thomas Carmody, Attorney-General (Edward J. Mone* of counsel), for the People of the State of New York, appellant. The court has not jurisdiction of the defendant, the People of the State of New York. (*Locke v. State,* 140 N. Y. 480; *Matter of Hoople,* 179 N. Y. 308; *Sanders* v. *Saxton,* 182 N. Y. 477; *Rexford* v. *State,* 105 N. Y. 229; *Seitz* v. *Messerschmitt,* 117 App. Div. 401; 188 N. Y. 587.) The water rights sought to be partitioned are not real property. (Gould on Waters [3d ed.], §§ 204–208; Farnham on Waters, § 461; *Sweet* v. *City of Syracuse,* 129 N. Y. 316; *City of Syracuse* v. *Stacey,* 169 N. Y. 231; *Hall* v. *Sterling Iron & R. Co.,* 148 N. Y. 432; *Strobel* v. *Kerr Salt Co.,* 164 N. Y. 303; *Clinton* v. *Myers,* 46 N. Y. 511; Reeves on Real Prop. 298; Farnum on Water & Water Rights, §§ 62–64, 462–496; *Scriver* v. *Smith,* 100 N. Y. 471; *Corning* v. *Troy I. & N. Factory,* 39 Barb. 311; *Pine* v. *Mayor,* 103 Fed. Rep. 337; *Union B. & P. Co.* v. *Allen Bros. Co.,* 107 App. Div. 529.) The water rights in question are not held by the parties as joint tenants or tenants in common. (Code Civ. Pro. § 1532; *Boyd* v. *Dowie,* 65 Barb. 237; *Smith* v. *Smith,* 10 Paige, 470; *Barton* v. *Reynolds,* 81 Misc. Rep. 15; Reeves on Real Prop. 90, 91, 969; Gerard on Titles, 324; *Organ* v. *M. & L. R. R. Co.,* 51 Ark. 235; *De Witt* v. *Harvey,* 4 Gray [Mass.], 486; *Union B. & P. Co.* v. *Allen Bros. Co.,* 107 App. Div. 529.) This is not an action for partition within the meaning or intent of section 1594 of the Code of Civil Procedure, and accordingly the state may not be made a party defendant thereto. (*Mead* v. *Mitchell,* 5 Abb. Pr. 92; Reeves on Real Prop. 993; Gerard on Titles, 60; *Cooper* v. *Cedar Rapids W. P. Co.,* 42 Iowa, 398; *Morrell* v. *Morrell,* 5 N. H. 134; *Higginbottom* v. *Short,* 25 Miss. 160; *Tinney* v. *Stebbins,* 28 Barb. 290; Gerard on Titles, 760; 4 Pom. Eq. Juris. §§ 1391, 1392; *Warren* v. *Westbrook Mfg. Co.,* 86 Me. 32; *Burnham* v. *Kempton,* 44 N. H. 78; *Head* v. *Amoskeag Mfg. Co.,* 113 U. S. 9; *De Witt* v. *Harvey,*

4 Gray [Mass.], 486, 496; *Jonesville Co.* v. *Ford,* 12 N. W. Rep. 377.)

*George P. Decker* for Columbia Distilling Company et al., appellants. This action is not sustainable as an action for land partition because there are no undivided shares held in common by plaintiff and defendant. (*Sweet* v. *City of Syracuse,* 129 N. Y. 316; *City of Syracuse* v. *Stacey,* 169 N. Y. 231.) There is no judicial jurisdiction by statute or independent thereof to decree actual partition of the mere right to use stream flow for power even where such right may be held in undivided title by two or more parties. (*Miller* v. *Miller,* 13 Pick. 237; *Smith* v. *Smith,* 10 Paige, 470; *Higginbottom* v. *Short,* 25 Miss. 160; *Cooper* v. *Cedar Rapids W. P. Co.,* 42 Iowa, 398; *Brown* v. *Cooper,* 98 Iowa, 444; *Brown* v. *Turner,* 1 Aiken [Vt.], 350; *McGillivray* v. *Evans,* 27 Cal. 92.) There is no judicial jurisdiction on the facts stated in this bill to entertain an action for the purpose of defining existing rights to use water for power nor has the court power to regulate such use by enforcing construction or maintenance of hydraulic works, where no covenants between the parties to do that are alleged. (*Carthage Mills* v. *Vil. of Carthage,* 200 N. Y. 1; *Schroeder* v. *Ennis,* 5 N. Y. S. R. 881; *Olmstead* v. *Loomis,* 6 Barb. 152; *Fiske* v. *Wilbur,* 7 Barb. 395; *Bardwell* v. *Ames,* 22 Pick. 333; *Emery* v. *Erskine,* 66 Barb. 9; *McGillivray* v. *Evans,* 27 Cal. 92; *Field* v. *Leiter,* 117 Ill. 341; *Warren* v. *Westbrook Co.,* 26 L. R. A. 284; *Gardner* v. *Vil. of Newburgh,* 2 Johns. Ch. 162.)

*Charles A. Hawley* and *Ernest G. Gould* for respondent. The court has complete jurisdiction of the person of the defendant People and of the subject-matter of the action. (Gerard on Titles [5th ed.], 114; *Floyd* v. *Carow,* 88 N. Y. 560; *Rogers* v. *James,* 1 Wend. 237.) An action

of partition between private persons will lie for the settlement, division and partition of water powers.  (*Smith v. Smith,* 10 Paige, 470; *Bellknap* v. *Trimbull,* 3 Paige, 577; *Hills* v. *Dey,* 14 Wend. 204; *Carthage  T. P. Co.* v. *Carthage,* 200 N. Y. 1; *Hempstead* v. *Loomis,* 9 N. Y. 423.)  The People of the State of New York were properly made defendants, and the complaint against them states a cause of action.  (*Townsend* v. *Becker,* 126 N. Y. 370; *Sage* v. *Culver,* 147 N. Y. 241; *Saterlee* v. *Kobbe,* 173 N. Y. 91; *International Paper Co.* v. *Hudson R. Co.,* 92 App. Div. 56; *Johnson* v. *Alleshire,* 130 App. Div. 178; *Lawrence* v. *Norton,* 116 App. Div. 896; *Wallace* v. *McEchron,* 176 N. Y. 424; *Becker* v. *McCrea,* 135 App. Div. 704; *Weston* v. *Stewart,* 137 N. Y. 119.)  Water power may be segregated and divorced from appurtenant real property, and even under those circumstances is the subject of partition.  (*Sweet* v. *Syracuse,* 127 N. Y. 316; *Syracuse* v. *Stacey,* 169 N. Y. 231.)  The complaint states a cause of action.  (*International Paper Co.* v. *Hudson R. Co.,* 92 App. Div. 56; *Lawrence* v. *Norton,* 116 App. Div. 896; *Townsend* v. *Bogart,* 126 N. Y. 370.)

WERNER, J.   The foregoing statement of the nature of these appeals indicates that we are to determine two questions.   The first is whether the action is one for the partition of lands within the purview of the Code of Civil Procedure (Secs. 1532 to 1595 inclusive), as is asserted by counsel for the plaintiff, and the other is whether, in any view that may be taken of the complaint and the character of the action, a cause of action of any kind is alleged against either of the three demurring defendants. The questions will be more fully stated when we reach the discussion that will logically follow an analysis of the complaint.

The complaint alleges that the plaintiff is the owner of certain lands, factories and water rights upon and in what is known as Seneca outlet in the village of Water-

loo.    Seneca outlet consists of such of the waters of
Seneca river as are not used for the Seneca and Cayuga
canal.    The map showing the *locus in quo* is appended
to the foregoing statement of facts.    This map and the
allegations of the complaint indicate that the waters of
Seneca outlet flow generally from west to east.    What is
known as Big island lies to the west of all the property
shown on the map.    At the westerly end of the island
there is a division of the waters in controversy.    The
canal, starting at the westerly end, runs to the north of
the *locus in quo*, and the waters constituting the outlet
run in a more southerly course along the southerly side
of Big island, and thence past the lands of the plaintiff
and the other properties shown on the map.    At a point
easterly of the east end of Big island the waters of the
outlet are divided into several channels by various islands.
The plaintiff alleges ownership of land, part of which is
in the vincinity of Washington street further up the
stream than most of the other properties shown on the
map; and another part of which is further down the
stream.    All of the plaintiff's land is located above the
properties of the demurring defendants, the distilling
companies.    The other lands indicated on the map are
scattered throughout the territory lying to the east of Big
island, and are adjacent to the various channels of the
outlet.    The lands of the various defendants, so far as they
can be identified by name, by the allegations of the com-
plaint, and by the map, appear to be owned in severalty.

After an extended description of the general situation,
the complaint alleges that the waters of the outlet are
valuable for hydraulic power purposes, and are so used
by the various owners.    The several parcels of land that
constitute the property owned by the plaintiff are then
described in detail.    In the description of each parcel
there is a reference to the water rights appurtenant
thereto.    In some the extent of the water power is speci-
fied in such terms as "sufficient to propel two runs of

stones," or "to drive and keep in motion four good
engines," while in others the mention is more general.
In addition to these allegations of ownership of lands
with their appurtenant water rights, there are others
showing that the plaintiff is also the owner of certain
water power rights which were conveyed to it separately
from any grant of land.

The complaint further alleges the plaintiff's ownership
of "Bear Race" and of the bed thereof, and also of all the
races leading therefrom, together with all riparian, flu-
vial and hydraulic rights connected therewith, excepting
the rights of the defendants Sweet, which are therein-
after set forth. Bear race is a channel running on the
southerly side of the outlet above the most westerly of
plaintiff's tracts and separated therefrom by an island.

After a description of the water rights to which the
defendants Sweet are entitled, the complaint proceeds to
allege in substance that the defendants Sweet, Waterloo
Woolen Manufacturing Company, Waterloo Wagon Com-
pany, Columbia Distilling Company, Industrial Distill-
ing Company, and the People of the State (the last three
being the demurring appellants) are the only persons or
corporations, besides the plaintiff, who are entitled to use
the waters of the Seneca outlet, and that the precise rights
and privileges of these defendants in such waters are
unknown to plaintiff; that they are not fixed by any
uniform method of measurement, and that the claims of
these defendants are not admitted by the plaintiff.

Then there are allegations that the plaintiff and the
defendants, who are owners of water rights as stated, are
tenants in common of the waters of the outlet; that these
waters are made available for use by a complicated system
of dams, races, flumes and contrivances; and that in
attempting to divide the waters in accordance with "their
aforesaid instruments of title" the methods of measure-
ment contained therein are inadequate to equitably
adjust their respective rights.

The complaint further alleges that the rights, privileges and interests of the parties to the action, in and to the waters of the outlet, are "contained in and claimed by them by virtue of a great number of deeds," which are complicated and difficult to construe as to appurtenant water rights; that the several defendants are using more of the waters than they are entitled to, and "in a wasteful and uneconomical manner," for purposes not authorized by their deeds, and so as to greatly impair the use and efficiency and value of the water rights, powers, privileges and preferences of the plaintiff; that the rights and privileges of the parties to the use of the waters are difficult to ascertain and determine, and should be "translated into terms of horse power potentiality" by the court; that because of the confusion of the rights "in common of the parties to this action" the plaintiff is put to great trouble and inconvenience; that disputes often arise as to the use, flow and discharge of the waters; that on account thereof plaintiff is greatly embarrassed and prevented from using the full amount to which it is equitably entitled; and that unless the court grants the relief prayed for, plaintiff will suffer irreparable loss and injury for which it has no adequate remedy at law.

Here follows an allegation setting forth that the water has diminished in quantity in recent years, and that in dry times the taking by the defendants of water in excess of their shares is a serious and continuous damage to the plaintiff.

Then there is a section of the complaint directed against the state alone, which shows that in 1813 the state patented the territory comprised within the *locus in quo* to certain persons, which created them riparian owners. There are references to portions of the act of 1813, chartering the Seneca Lock and Navigation Company, and also to the act of 1825, under which the state reacquired the rights of the company. The allegations as against the state are that under these statutes and

certain others which are mentioned, the state is entitled only to a certain limited and specified use of the waters, and has not the right to deprive the plaintiff and certain of the defendants of their rights to the waters in excess of such state use; that the state is about to construct an enlarged canal which will take more water than it has the right to use under these statutes; and that it has let a contract for the construction of such enlarged canal.

As against all the defendants the complaint alleges that the water power in question has been fully developed for many years; that except as otherwise set forth the plaintiff is entitled to all the hydraulic rights, and that the defendant Waterloo Woolen Manufacturing Company claims to own all the water power of the outlet as against all the defendants except the defendants Sweet, the Central New York Gas and Electric Company, the People of the State and this plaintiff.

All this is followed by allegations to the effect that all of the defendants, except the ones last above specified, have or claim to have some rights or interests in the waters and water power which are not admitted by the plaintiff, but of the precise nature of which plaintiff is ignorant and which it cannot with due diligence ascertain.

The relief asked is that the rights to the waters be defined and partitioned, and that the defendants be restrained from using more of the waters than by the judgment they shall be found entitled to use; that all of the defendants except those specified in paragraph 22 be excluded from the use of the water, and that the rights of the specified defendants be defined. Special relief is asked against the state and the village of Waterloo.

We proceed first to consider the question whether this is an action for the partition of lands within the meaning of the provisions of the Code of Civil Procedure (Secs. 1532–1595) relating to that subject. If this is such an action, it is plain that " The people of the state may be

32

made a party   *   *   *   in the same manner as a private person " (Sec. 1594), and that many of the very general allegations of the complaint, which are too indefinite in an action for purely equitable relief, are pertinent to the statement of a cause of action in partition, not merely against the state, but against all the defendants. We think the action is not one for the partition of lands, and were it not for the insistent contention to the contrary of the eminent counsel for the plaintiff, we should rest our decision without discussion upon the provisions of the Code. In view of the learned counsel's argument, and of the authorities cited to support it, we shall briefly state the reasons for our conclusion. Without going into the history of actions for the partition of lands, it is sufficient to say that in this state the subject is governed by statute which prescribes in unmistakable terms the subject-matter of which partition may be had and the parties between whom it may be made. "Where two or more persons hold and are in possession of real property, as joint tenants or as tenants in common, in which either of them has an estate of inheritance, or for life, or for years, any one or more of them may maintain an action for the partition of the property, according to the respective rights of the persons interested therein; and for a sale thereof, if it appears that a partition thereof cannot be made, without great prejudice to the owners." (Code Civ. Pro. sec. 1532.) This language plainly indicates that the action can be maintained only by joint tenants or tenants in common, having one of the enumerated estates in land, against co-tenants having similar estates. The allegations of the complaint herein distinctly negative any such unity of interest or title, for they show that all the lands described are held in severalty by the various owners who are named. There are allegations, it is true, that the plaintiff and the defendants who own water rights are tenants in common of the waters of Seneca outlet, and that the surplus of such waters, over and

above a certain quantity that may be lawfully taken by the state, belong in common to the plaintiff, the defend-ants Sweet and the defendant Waterloo Woolen Manufacturing Company; but these are not the joint or common tenancies in land with which courts of law have to deal in statutory actions for partition. In the consideration of the demurrer interposed by the state it should be constantly borne in mind that in actions for partition under the Code the subject-matter is land as land capable of being sold in bulk or divided into separate parcels. If this is such an action then the state is properly made a party, for its legislature has given the requisite permission (Sec. 1594); and if it is not such an action the state's demurrer must be sustained, because the state has not consented to be sued in the tribunal in which the action is brought. The question is not one of fine distinctions in phraseology or in the use of words, but of substantive and vital differences between actions utterly dissimilar in form and purpose. If the plaintiff's real purpose in this action is to obtain an adjudication ascertaining, construing and limiting the use of the water in which it and some of the defendants have a joint interest, the use of the term "partition" in the prayer for relief does not change the form of the action or the substance of the relief which is appropriate. In that view of the complaint the action is not one at law for the partition of lands, but a suit in equity to define, regulate, limit and control the joint interests of the parties in a thing incapable of sale in bulk or of actual physical separation. This, we think, is the nature of the action at bar and of the relief prayed for.

Counsel for the plaintiff admits that water is not the subject of absolute ownership, but he contends that water powers, riparian rights and hydraulic privileges are real property and the subject of partition as real property. That statement cannot be accepted without qualification. Water is not land. It is an incident to land

which gives to the owner of the land certain rights and privileges in the use of the water. If it flows over his own land it is so far identified with the realty as to be a corporeal hereditament; and if the right is to use it as it flows over the lands of another it is an incorporeal hereditament. In either event the right of property in the water is usufructuary. It is not an ownership in the fluid as such, but the right to its flow for the various lawful uses to which it may be subjected. Since such an hereditament is incident to land, it naturally passes with land, and, therefore, it is properly classified as real property in the "Real Property Law," in the "Statutory Construction Law" and in the "Tax Law." The fact remains, however, that hereditaments and easements in real estate are often incapable of separation among co-tenants, although the nature and extent of the rights of the several parties may be judicially ascertained and defined. We need not go beyond the case at bar for an apt illustration. Here are lands owned in severalty abutting on waters in which the separate owners have riparian rights. These rights cannot be segregated as land. Flowing water in its physical condition is not capable of division in the same manner and to the same extent as land. Land can be separated into distinct parcels by boundary lines or other monuments, and can be separately used by the owners among whom it is divided. Any attempt to make such a division of waters would simply result in destroying their usefulness. None of the abutting owners have a separate or distinct title to a particular part of the waters of the outlet. Each is entitled, *per my et per tout,* to his portion of the whole volume of the stream. In the consideration of this subject we must not fall into the confusion which arises from the general statements of text writers. In Gould on Waters (Sec. 315), for instance, the learned author says that "tenants in common of water courses or other water rights may, as of right at the common law, have partition of the whole property so held,

regardless of the difficulty, hardship or inconvenience resulting from so doing." The cases cited under this paragraph disclose the danger of an unqualified acceptance of such a comprehensive declaration. *Hanson* v. *Willard* (12 Maine, 142) was a case in which the parties were tenants in common of lands on which there was a mill with its appurtenant mill privileges, and the right to a partition of the land necessarily involved the disposition of the mill and its privileges. And so in the case of *Smith* v. *Smith* (10 Paige, 470, 471), which seems to be the plaintiff's chief reliance on this appeal, the controlling facts were that a father, who was the owner of a mill pond and several mills, conveyed a separate mill to each of two sons, "together with the equal undivided half part of the dam and the stream, pond, and pondage grounds, adjacent to the lands conveyed in severalty." There the tenancy in common of the pond and pondage grounds was held to carry with it the right to a partition of the lands and, as an incident thereto, the regulation of the use of the water power. (To the same effect see *Miller* v. *Miller*, 13 Pick. [Mass.] 237; *Morrill* v. *Morrill*, 5 N. H. 134; *Cooper* v. *Cedar Rapids Water Power Co.*, 42 Iowa, 398; *Rohn* v. *Harris*, 130 Ill. 530.) Counsel for the plaintiff further argues that there are many decisions in this state to support his contention that this is an action for the partition of lands. He cites *Belknap* v. *Trimble* (3 Paige, 577); *Hills* v. *Dey* (14 Wend. 204); *Olmsted* v. *Loomis* (9 N. Y. 423); *Dexter Sulphite P. & P. Co.* v. *Frontenac Paper Co.* (20 Misc. Rep. 442), and *Carthage T. P. Mills* v. *Vil. of Carthage* (200 N. Y. 1). All these were suits in equity to define and regulate the uses of water powers and they are not relevant to the branch of this case now under discussion.

The foregoing views lead to the conclusion that the demurrer of the state should have been sustained and the complaint dismissed as to this demurrant. In this aspect of the case we deem it unnecessary to discuss the effect

upon the plaintiff's rights of the various legislative enactments under which it is alleged that the state has acted in the operation of the old Cayuga and Seneca canal, as it is now acting in the building of a new and enlarged canal. These are proper subjects for consideration in the Court of Claims, to which the plaintiff must take its grievance against the state, but for obvious reasons we should refrain from anticipating questions that may in due course come to us.

The second branch of the case, which requires a decision upon the demurrer to the complaint interposed by the two distilling companies, involves the consideration of questions quite different from those discussed under the first head. There can be no doubt of the right of a court of equity to assume jurisdiction of this action if the complaint sets forth a justiciable controversy between the plaintiff and these two demurring defendants. That may be regarded as settled beyond peradventure by the statements of all the text writers, by the cases already cited, and by the concurrence of the opposing counsel. We have, therefore, to ascertain whether the complaint so definitely and clearly recites such an unlawful invasion of the plaintiff's rights by these distilling companies, or by any of the other defendants except the state, as to justify the remedial action of a court of equity. It is conceded that these distilling companies are entitled to the use of some portion of the waters of Seneca outlet, and it appears from the record that their premises are below any of the lands or water rights owned in severalty by the plaintiff. It is, therefore, not apparent how the use of the waters by these defendants interferes with their use by the plaintiff, and the complaint has been searched in vain for any allegation on that subject. There are between sixty and seventy defendants, however, and we shall assume that if the complaint states a cause of action against any of them, the distilling companies are proper parties in order that

there may be a complete adjudication upon all the interests involved. In this connection it is pertinent to observe that while the complaint abounds in general allegations of plaintiff's ignorance of the extent of its recently acquired lands and water rights, it contains not a single allegation definitely charging any particular defendant with the commission of any specific wrongful act. The pleader evidently proceeded on the theory that the action was for partition under the Code, and that when he had described in the complaint his joint interest with others in the waters of the outlet, the court would as matter of course assume jurisdiction. We have passed that point in the discussion and we are now considering the sufficiency of the plaintiff's pleading as a bill in equity. What does it allege against any defendant? In seeking to answer this question we shall have to indulge in some repetitions of the salient allegations of the complaint. As to the defendants Sweet, it says that they " are entitled to but four runs of common mill stones; " that said measurement is indefinite and uncertain; that as plaintiff is informed and believes, the same does not exceed fifty horse power; and that this is all of the hydraulic power to which said defendants Sweet are entitled under all circumstances and conditions." In the light of such an allegation one naturally looks for the further charge that the defendants Sweet are using more than their thus defined share of the waters, but without avail. Again there is a paragraph which sets forth that various defendants, including the distilling companies, are the only persons and corporations who have the right in common with the plaintiff to the use of the waters of the outlet, " and that the precise rights and privileges, if any, of said defendants (other than as herein set forth) in and to the waters of said outlet and the mill races adjacent thereto and connected therewith *are unknown to plaintiff,* and the same are not fixed by any uniform method of measurement and that the nature and exact extent

thereof are indefinite and uncertain, *and that the plain-tiff is wholly ignorant thereof.*" Then there is an alle-gation that the methods of measurement defined in the instruments of title by which the several parties acquired their rights "are wholly inapplicable to equitably and justly" determine, fix and establish and enforce the rights of the plaintiff; and this is followed by the general charge that all of the "several defendants have been and are using more of the waters of said outlet than they are respectively entitled to, and have been and are so using said waters in a wasteful and uneconomical manner and for purposes not authorized by the grants and restrictive covenants in their respective title deeds, and in such a manner as to greatly impair the use and efficiency and value of the water rights, powers, privileges and prefer-ences which are, and of right ought to be, enjoyed by the plaintiff;" that it is difficult to ascertain and measure the rights and interests of the parties unless they shall be translated into terms of horse power potentiality, and that disputes and discussions arise out of these compli-cations. Not one of these allegations points out any wrongful act upon which any defendant can properly be put to his defense. Upon these general and indefinite allegations the plaintiff asks that these demurring defend-ants, who are lower riparian owners, shall be subjected to a vexatious and expensive suit in equity. It is apparent that what the plaintiff really wants is a judicial construction of the title deeds and decrees under which the several parties hold their lands and water rights. This is not a valid rea-son for inflicting this litigation upon the defendants. (*Bailey* v. *Briggs*, 56 N. Y. 407.) Although the plaintiff alleges ignorance of its rights and of the rights of the other parties, it asserts that all the defendants are making a wasteful and uneconomical use of the waters; and even this part of the complaint, which comes nearer to stating a grievance than any other, does not show that the plain-tiff is not getting all the water to which it is entitled, or

that any one or more defendants are in the wrong. Courts of equity are not inquisitorial but remedial. It is not their function to assist in creating causes of action where none are alleged. One of the recognized limitations upon their jurisdiction is that a plaintiff seeking relief has no adequate remedy at law. We are not informed by this complaint how this plaintiff is circumstanced in that regard except as the complaint pleads the legal conclusion that there is "no adequate remedy at law." The plaintiff also asks for an injunction, not to restrain the continuance of any wrongful act heretofore committed or now in commission, but to enjoin the defendants against the use of "more of said waters than by the judgment of this court they shall be found entitled." It would seem to follow that the court should not entertain the plea for such preventive relief except upon the allegation of a clear and certain right in the plaintiff and an injurious interruption of that right by the defendants which, upon just and equitable principles, should be prevented. (*Gardner* v. *Village of Newburgh,* 2 Johns. Ch. 162; *Arthur* v. *Case,* 1 Paige, 447; *Anon.,* 1 Vern. 120; *East India Co.* v. *Sandys,* 1 Vern. 127; *Hills* v. *University of Oxford,* 1 Vern. 275; *Anon.,* 1 Vesey Sr. 476; *Anon.,* 2 Vesey Sr. 414.)

Courts should not be astute to find reasons for denying the aid of equity to those who invoke it in proper cases for the protection of rights and the redress of wrongs that are clearly stated. They should not be more astute to subject a large array of defendants to harassing and vexatious litigation unless it is reasonably certain that it is proper or necessary. Without exception the cases cited in support of the complaint, to some of which we have referred in an earlier part of the discussion, were all based upon complaints showing the commission of some specific wrong which justified equitable intervention. And to these we may add the following: *Belknap* v. *Trimble* (3 Paige, 577); *Emery* v. *Erskine* (66 Barb.

9); *Mayor of York* v. *Pilkington* (1 Atk. 282); *De Witt* v. *Harvey* (4 Gray, 486); *Vil. of Head* v. *Amoskeag Mfg. Co.* (113 U. S. 9); *Strobel* v. *Kerr Salt Co.* (164 N. Y. 303); *Carthage T. P. Mills* v. *Vil. of Carthage* (200 id. 1); *Patten Paper Co.* v. *Kaukauna Water Co.* (70 Wis. 660); *Oakland Woolen Co.* v. *Union Gas & El. Co.* (101 Me. 201). It may be that the plaintiff has a meritorious cause, but it is certainly not going too far to compel it to state it so clearly that the court may know what the issues are, and that the defendants may be able to ascertain what they have to meet. With the state eliminated from the controversy, and the nature of the action defined, a large part of the complaint consists of irrelevant, redundant and confusing allegations that should be expunged. For these reasons we conclude that the demurrer of the state should be sustained on the first and fourth grounds therein stated; and that the demurrer of the two distilling companies should be sustained on the second ground therein stated.

The order of the Appellate Division and the interlocutory judgment of the Special Term in each case should be reversed, with costs to the demurring defendants in all the courts. The complaint is dismissed as against the state, and the plaintiff is given leave to plead over as against the other defendants within forty days. The first, second and third certified questions are answered in the negative, and the fourth question is not answered.

HISCOCK, COLLIN, HOGAN, MILLER and CARDOZO, JJ., concur; WILLARD BARTLETT, Ch. J., not voting.

Order reversed.