CLARK B. WOOD *vs.* COMMISSIONERS OF WEST BOSTON AND CRAGIE BRIDGES.

Suffolk.    March 9. — 12, 1877.    ENDICOTT, J., absent.

A deed of a lot of land, "with the wharf thereon," described the land by metes and bounds, and stated that a part of the granted premises was held under a certain statute, and referred to a certain deed on record as to the grantor's title. That statute authorized the grantor to extend his wharf to the harbor commissioners' line; there was a solid wharf, part of which had a water front, within the metes and bounds, extending to the commissioners' line; and outside of this line and of the metes and bounds was a pier wharf which extended from a part of the solid wharf and was used in connection with it. *Held*, that the pier wharf did not pass by the deed. *Held, also*, that evidence that it was the intention of the parties that it should so pass, that the grantor had title to it by prescription and by grant under the deed referred to, and that the grantee had occupied it as tenant of the grantor, prior to the deed from him, and afterwards as owner, was inadmissible.

If land is taken for a public use under the St. of 1873, *c.* 199, which enacts that the damages shall be ascertained as provided in the Gen. Sts. *c.* 43, the right of a per-

son injured is fixed by the taking, and a subsequent conveyance to him from an-
other owner of land so taken cannot enlarge his rights.

No exception lies to the refusal of the judge presiding at the trial of a petition,
under the Gen. Sts. *c.* 43, for the assessment of damages for land taken for a pub-
lic use, to allow the petition to be amended by joining other persons having inter-
ests in the land described in the petition.

PETITION to the Superior Court for a jury to assess damages
for land taken under the St. of 1873, *c.* 199, for the widening of
Cragie or Canal Bridge in Boston.

At the trial, before *Bacon,* J., it appeared that the order tak-
ing the land was passed July 18, 1874. No question was made
as to the petitioner's title to the land taken inside the harbor
commissioners' line, and marked A. on the plan printed in the
margin,* and the only question was as to his title to that part of
the pier wharf marked B. on the plan ; and the evidence on this
point was as follows :

On April 20, 1840, Jesse P. Richardson conveyed to Edward
L. Raymond by warranty deed, recorded with Suffolk Deeds,
lib. 454, fol. 234, a lot of land and flats, at the corner of Leverett

Charles River.

Street and·what is now North Charles Street, to low water **mark,** "together with all the rights, easements, privileges and appurtenances to the premises belonging, including all my right, title, interest and estate, in and to the pier wharf or structure at the northwest end of the premises, on which structure a ɔuilding known as the Gymnasium formerly stood."

In 1842 the petitioner hired the premises of Raymond to be used as a coal and wood wharf. The pier wharf had stood in its present place, next the bridge, since 1830 or earlier, but up to 1842 the rest of the premises had not been filled up solid. The commissioners' line, established by the St. of 1840, *c.* 35, § 3, adopted the southeasterly side of the pier wharf as the harbor line at that place. Raymond agreed with the petitioner to fill the premises up solid to the pier wharf, and to let him the whole, the solid part and the pier wharf, which together formed one wharf, for the purpose of a coal wharf. Raymond filled out solid to the pier wharf, with the exception of a small triangular piece lying next the bridge and bounded by the bridge and the pier wharf on two sides and by a wooden barricade on the third side. The solid structure and the part on piers thus formed one wharf, and vessels loading or unloading necessarily lay alongside the pier wharf and received or delivered their cargoes therefrom and thereupon. There was no passage to or from the part on piers to North Charles Street except over the solid part of the wharf, but there was direct access from the pier wharf to Leverett Street.

Raymond died in or about 1865, and all his right in the premises descended to his two daughters, Caroline E. Benton and Mary E. Ferris. Mrs. Benton, her husband joining, conveyed all her interest to her sister, and she, her husband joining, conveyed to the petitioner, by a deed dated January 1, 1869, "all that lot of land with the wharf and buildings thereon," "bounded southeast by North Charles Street two hundred and forty-one feet six inches; southwest by Livingston Street one hundred· and forty-three feet; northwest by the commissioners' line two hundred and twenty-two feet; northeast by Canal Bridge one hundred and fifty-five feet, four and one fourth inches. A part of the granted premises is held by the authority of and under the provisions of a resolve of the Legislature, approved

February 24, 1845, a copy of which resolve is recorded with Suffolk Deeds, lib. 855, fol. 65, and this conveyance is made subject to the terms and conditions of said resolve, and none of the covenants hereinafter contained shall in any possible event or contingency be deemed or held to apply, relate to, or to include that part of the granted premises which is held under said resolve, or which is subject to its terms and provisions.    Or however otherwise said premises may be bounded, measured or described.    Being part of the same premises conveyed to said Mary by Austin W. Benton and wife, by deed dated January 2, 1865, and part of the premises devised to said Mary by her father, the late Edward A. Raymond, by will which has been duly proved in Norfolk County.    As to his title, see lib. 454, fol. 234; lib. 462, fol. 179." *    The deed contained the usual covenants as to the premises granted, " except the portion held under said resolve."

The petitioner offered to show that from 1842, when the filling out took place, to the present time, the structure on piers constituted the head or front of the wharf, at which alone vessels could lie; that Raymond had claimed and occupied the pier wharf as his property by an adverse and exclusive occupation from a time prior to 1842 to the time of his death; and that the petitioner occupied the same premises from 1842 to the date of his purchase, as lessee and tenant of said Raymond and his representatives, and, since the date of his deed, as owner, up to the present time; that the premises had been continuously held by said Raymond and his grantees, under claim of title, by an open and adverse occupation against the State and all persons, and that they had occupied and claimed exclusive right to the space by the side and end of the pier wharf as a berth for vessels lying at said wharf and as appurtenant thereto; that the purchase money paid by the petitioner was based upon the entire parcel of land, including the pier wharf, its berths and appurtenances; that he supposed they were included in the deed, and intended and meant, by the word " wharf " in such deed, the

---

* The first reference is to the deed of 1840, from Richardson to Raymond. It was not contended at the argument that the last reference related to the land in question.

pier wharf in question ; that no other wharf was used, or had ever been used for the receipt of coal, besides this pier wharf, and that it was the intention of the parties to the deed, and they supposed it would be so construed, that the wharf referred to in the deed was this pier wharf; that he paid rent for the whole to Raymond and his heirs until the deed, and after the deed no claim was made upon him for rent for any part of the premises, but the grantors agreed to the petitioner's treating the conveyed premises as including the pier wharf and its appurtenances; that, before the taking of the land for the widening, he notified the commissioners that his title included the pier wharf and its berths, and that they awarded him damages for taking part of the same as his property ; that some objection having been made to the petitioner's title to receive the damages for the taking of part of the pier wharf, he obtained from the heirs of Raymond a release and quitclaim, dated September 24, 1874, of all their interest in the pier wharf, declaring that the deed of 1869 to him was intended to include the same ; and, the petitioner offered this deed in aid of his proofs of title, and in proof of his right to receive the damages in question. But the judge ruled it to be inadmissible for either purpose. The petitioner also offered to show, by all the heirs of Raymond, that the intent and purpose of the conveyance of January 1, 1869, was to convey all their title to this pier wharf, and the right to berths and wharfage.

The land of Raymond and of the petitioner extended beyond the pier wharf in a southerly direction, and was filled up to the commissioners' line ; but the petitioner offered to show that the part beyond the pier wharf had always been let and used as a separate wharf, and that the berth for vessels at its end was more shallow and with a harder bottom than the pier wharf, and could only be used for a small class of vessels, while the pier wharf could be used by the largest vessels.

The petitioner contended that he was entitled to damages for the taking of a portion of the pier wharf, for damage to his coal yard and buildings by reason of shortening the pier wharf whereby vessels could not unload at his coal sheds, and for the taking of the water he had been wont to use as a berth for his vessels while unloading. The judge ruled that the petitioner

had no title to the pier wharf, or the flats under or water above the same, and that the title to the pier wharf, if there was any, remained in the heirs of Raymond, and that his only claim for damages for land taken was for the land taken easterly of the commissioners' line.

The petitioner also moved for leave to amend his petition by joining the heirs of Raymond, but the judge refused to grant it.

By agreement of parties, and before verdict, the judge reported the case for the consideration of this court. If the rulings were correct, the case was to be sent to an assessor to ascertain the damages, and judgment was to be entered for such damages as he should assess, or as the parties should agree upon; otherwise, to stand for a new trial.

*R. H. Dana, Jr. & L. M. Child,* for the petitioner.

*C. F. Kittredge,* for the respondents, was not called upon.

GRAY, C. J. It is unnecessary to consider the sufficiency of the evidence of Edward A. Raymond's title in the pier wharf, because the deed from his heirs to the petitioner in 1869 did not convey any title therein.

This deed clearly describes the lot conveyed by metes and bounds, one of which is " northwest by the commissioners' line;" and that line, as defined by the St. of 1840, *c.* 35, § 3, corresponded at this place with the southerly or southeasterly side of the pier wharf, the title to which is in controversy, and with the northerly or northwesterly side of the solid wharf, which is admitted to be included in the deed. The deed conveys no wharf or building, except " the wharf and buildings thereon," that is, on the lot described by metes and bounds. The statement that " a part of the granted premises is held by the authority of and under the provisions of a resolve of the Legislature, approved February 25, 1845," evidently means the special act of 1845, *c.* 69, which authorized Raymond to extend his wharf from low water mark to, and not beyond, the commissioners' line. The reference to the records of deeds to Raymond is for the sources of Raymond's title, and not by way of description of the premises granted by his heirs to the petitioner. The whole description in the deed is utterly inconsistent with an intention to

convey the pier wharf, which is outside of the bounds given
and is in effect itself one of the bounds which the deed calls
for. *Doane* v. *Broad Street Association*, 6 Mass. 332. *Storer* v.
*Freeman*, 6 Mass. 435. *Ammidown* v. *Granite Bank*, 8 Allen,
285.

The evidence, offered at the trial, of the previous occupation
by the petitioner as tenant of Raymond, and of the acts and
understanding of the parties, cannot control the clear and unam-
biguous terms of the deed, or establish a title in the petitioner
by adverse possession. *Saltonstall* v. *Long Wharf*, 7 Cush. 195.
*Bond* v. *Fay*, 12 Allen, 86. *Zeller* v. *Eckert*, 4 How. 289, 296.

The rights of all parties to recover damages for lands taken
by the commissioners to widen the bridge were fixed at the time
of the taking. St. 1873, c. 199. Gen. Sts. c. 43, §§ 14–16. The
subsequent release from the heirs of Raymond to the petitioner
did not therefore enlarge his right.

If the motion to amend the petition by joining Raymond's
heirs as petitioners could have been granted at the stage at
which it was made, it was at least within the discretion of the
presiding judge to refuse it, and his refusal cannot be revised by
this court. *Gwynn* v. *Globe Locomotive Works*, 5 Allen, 317.
*Murphy* v. *Boston, Clinton & Fitchburg Railroad*, 110 Mass.
465.                   *Rulings affirmed; case referred to an assessor.*