CENTRAL WHARF AND WET DOCK CORPORATION *vs.* PROPRIETORS OF INDIA WHARF.

Suffolk. Nov. 19, 1877. — Jan. 5, 1878. ENDICOTT & LORD, JJ., absent.

An indenture between A. and B., executed with the declared intention to establish, between the wharves and estates of A. and the estate of B. and any wharf that might be built thereon, an open dock and common passageway for ships, boats and other craft, contained an express grant from A. to B., his heirs and assigns, of the right and use of such an open dock and passageway, and a corresponding grant from B., who claimed some rights in the dock by virtue of his title in an existing wharf of his own, to A.; authorized B., his heirs and assigns, to fill up a small triangle of the flats at the head of the dock as a wharf or road; recited that A. "does hereby remise, release, bargain, sell and convey" to B. a small part of A.'s wharf; "the estate so above conveyed to be subject to all the conditions, agreements and covenants heretofore made;" acknowledged the right of B. to build his wharf in such a way that there would be two projections into the dock, and concluded with a grant and quitclaim to B., his heirs and assigns, of all A.'s right and title in the land which might be covered by the wharf to be built by B. *Held,* that the fee in the soil of the open dock, or of any part of it, did not pass to B.

WRIT OF ENTRY dated September 20, 1875, to recover a parcel of land in Boston, marked A on the plan printed in the margin of the next page. Plea, *nul disseisin.* The case was submitted to this court on agreed facts, the material parts of which were as follows :

In 1814, the tenant was seised in fee of India Wharf, India Street Wharf, (which was wholly built upon land which had been

originally flats over which the tide ebbed and flowed,) and of **the** land, then covered by water and forming an open dock, mark**ed** A, B and C, on the plan.*

On December 24, 1814, an indenture was entered into between the tenant, of the one part, and Ebenezer Francis, under whom the demandant claims, of the other part, containing the follow- ing : "As it is the intention of the parties to this indenture, for the benefit of their respective estates, to establish between the wharves and estates of the said proprietors of India Wharf and the said estates of the said Francis, and any wharf that may be built thereon, an open dock and common passageway for ships, vessels, boats, &c., and for that and other purposes herein ex- pressed of making the grants, conveyances and contracts here- after mentioned. Now this indenture witnesseth, that the said proprietors of India Wharf, in consideration of the grants, cove- nants and agreements of the said Francis hereinafter set forth, and of one dollar paid them by said Francis, the receipt whereof they do hereby acknowledge, do hereby grant and bargain and sell to the said Francis his heirs and assigns forever, the right and use of an open dock and passageway for all ships, vessels, boats and floats of every description, with free ingress and egress for the same at all times, to and from his and their said wharves and estates and every part thereof, in and over the following de-

*

scribed pieces of land and flats, that is to say," [describing by metes and bounds as one parcel the entire flats between the wharves of the respective parties, and including what appears on the plan as A, B, C, D and E.] "To have and to hold the said right and use of said dock and the passageway as aforesaid, to him the said Francis his heirs and assigns forever. And the said Ebenezer Francis, in consideration of the premises, and of the conveyance, agreements and permission of the said proprietors of India Wharf hereinafter set forth, and of one dollar by them to him paid, does hereby grant, bargain and sell to the said proprietors, their successors and assigns forever, the right and use of an open dock and passageway for all ships, vessels, boats and floats of every description with free ingress and egress for the same, at all times to and from their wharves and estates and every part thereof in and over the above described common dock land and flats. To have and to hold the said right and use of said dock and the passageway aforesaid to the said proprietors, their successors and assigns forever. And it is mutually understood and agreed that the said dock is forever to remain open and to be a common passageway as aforesaid to the parties, their respective heirs, successors and assigns ; and that each party and the heirs, successors and assigns of each respectively, are entitled, have a right to and may receive to their own use forever the dockage which shall accrue from all ships, vessels, boats and floats of every description, lying within that part of said dock which is nearest adjoining and contiguous to their respective estates and wharves now or hereafter to be built, and the said parties do hereby mutually grant the same to each other respectively, to their respective heirs, successors and assigns accordingly forever. It is also understood and agreed that no fixtures or buildings of any kind (except as hereinafter permitted to said Francis) are to be erected within the bounds above described as said dock, nor any unnecessary obstructions or impediments permitted therein ; and it is the understanding of the parties that said Francis, his heirs and assigns, may, and he and they are hereby permitted to fill up, as a wharf or road and for such use and purpose only forever, so much of the northwesterly corner of said dock as is contained in the triangle at said corner," [describing by metes and bounds the parcel marked

C on the plan.] " And in furtherance of the views and agreements of the parties, and in consideration of the premises, and of the further sum of one dollar paid by said Francis to the said proprietors of India Wharf, the receipt whereof is hereby acknowledged, the said proprietors do hereby remise, release, bargain, sell and convey to said Francis that part of the said India Street Wharf which lies northerly of a line run at right angles across said wharf," [being the lot marked F on the plan.] " The estate so above conveyed to be subject to all the conditions, agreements and covenants heretofore made and which are now enforced with any persons touching any part thereof. Also the said proprietors do hereby acknowledge the right of said Francis (any claim of said proprietors notwithstanding) to erect his wharf projecting at the southeasterly part thereof towards said India Wharf in the form and in the direction represented in the annexed plan,* and do grant and quitclaim to him all their right, title, interest and estate in and to the land which may be covered by the said wharf. To have and to hold the said conveyed and granted premises to him the said Francis his heirs and assigns to his and their use and behoof forever."

In 1868, Atlantic Avenue, as shown on the plan, was laid out as a public highway, by the mayor and aldermen of the city of Boston, under the authority given by the St. of 1867, c. 324, and was constructed in the following year in such manner as to exclude the tide water from the dock west of it; and in 1870 and 1871 this portion of the dock (marked A and B on the plan) was filled in with earth by the city of Boston, under authority of the St. of 1869, c. 181, to abate a nuisance.

At the date of the indenture, Francis owned the flats on which Central Wharf was afterwards built, and a wharf called the Island Wharf, which was near the place where Atlantic Avenue now crosses the dock, and claimed certain rights in the common dock, outside of where Atlantic Avenue now is, by virtue of his ownership of the latter wharf, but these rights the tenant did not acknowledge. Since the indenture of 1814, the demandant has

---

\* The plan annexed to the indenture showed two projections southward from the eastern end of Central Wharf, which is not included on the plan printed *ante*, 562.

acquired, by sundry mesne conveyances, all the title, estate, rights and privileges conveyed to Francis by that indenture, and also all such as were referred to therein as belonging to Francis.

Central Wharf was built soon after the indenture of 1814 ; the parties have since constantly maintained their wharves ; and the dock referred to in the indenture of 1814, except the portions thereof occupied by certain extensions of their wharves, mutually agreed to, but which do not cover any portion of the demanded premises, was constantly and uninterruptedly used by both parties from the time of the building of Central Wharf until its use was prevented by the construction of Atlantic Avenue.

During the whole of this period, the demandant has, under the indenture, used the portion of India Street Wharf thereby conveyed to Francis, and that portion of the dock contiguous thereto, as a berth for ships and vessels, calling the same "the short berth," and has always received to its own use the dockage and wharfage accruing from the short berth and this wharf, in the same manner as the other income from its wharf property.

The demanded premises are situated between the original high-water mark and the original low-water mark, and are all within one hundred rods of the original high-water mark. The course and direction of the channel opposite the front of the dock, between the wharves of the respective parties, is parallel to the seaward front of Central Wharf, and nearly at right angles to the course of the dotted line between parcels A and B on the plan.

At the date of the writ, the tenant was in possession of the demanded premises, claiming adversely to the demandant.

If, on the foregoing facts, the demandant was entitled to recover, the case was to stand for hearing to determine the extent of the land for which it should have judgment ; if the demandant was entitled to no part of the demanded premises, judgment was to be entered for the tenant.

*C. A. Welch & M. Williams, Jr.*, for the demandant.

*G. O. Shattuck & S. S. Shaw*, for the tenant, were not called upon.

GRAY, C. J. The only question in this case is whether the fee in the soil of the dock between the two wharves, which is admitted to have been in the tenant before the execution of the

indenture of 1814 between the tenant and Francis, under whom the demandant claims title, passed thereby to Francis, by virtue of the grant to him in that indenture of a small portion of wharf at the head of the dock.

As a general rule, the grant of a wharf on the sea-shore passes the grantor's title, under the ordinance of 1647, in the flats adjacent towards low-water mark, as appurtenant to, or, more strictly speaking, as parcel of the granted premises. *Doane* v. *Broad Street Association*, 6 Mass. 332. *Ashby* v. *Eastern Railroad*, 5 Met. 368. *Wheeler* v. *Stone*, 1 Cush. 313, 321. *Ammidown* v. *Granite Bank*, 8 Allen, 285, 291, 292. But this, like all other general rules of construction, must yield if a different intention is manifested by the terms of the deed or other instrument of conveyance. *Storer* v. *Freeman*, 6 Mass. 435. *Chapman* v. *Edmands*, 3 Allen, 512. *Wood* v. *Commissioners of Bridges*, 122 Mass. 394. *Hathaway* v. *Wilson*, ante, 359.

The principal object of the indenture of 1814 is therein declared to be to establish, between the wharves and estates of the tenant in this action, and the estates of Francis and any wharf that may be built thereon, an open dock and common passageway for ships, boats and other craft. The indenture contains, in the first place, an express grant from the tenant to Francis, his heirs and assigns, of the right and use of such an open dock and passageway, but none of the fee in the soil of the dock. The ensuing grant from Francis to the tenant of a corresponding right to use the common dock is explained by the fact that Francis claimed some rights in the dock by virtue of his title in an existing wharf of his own, and does not imply any grant to him of the fee in the dock. The tenant then expressly authorizes Francis, his heirs and assigns, to fill up a small triangle of the flats at the head of the dock as a wharf or road, and may be held to have thereby granted to him the fee in the flats so filled up, but certainly not in the rest of the flats. *Lufkin* v. *Haskell*, 3 Pick. 356. The tenant also conveys a small part of his adjoining wharf to Francis. The further provision, "the estate so above conveyed to be subject to all the conditions, agreements and covenants heretofore made," would seem to have been inserted to prevent the rights of either party to use the common dock from being in any way affected by these grants of land.

The indenture concludes with a grant and quitclaim to Francis, his heirs and assigns, of all the tenant's right and title in the land which may be covered by the wharf to be built by Francis, projecting at its seaward end towards the tenant's wharf.

The main purpose of the indenture, and the contrast of the terms used where land is expressly granted with those used in granting the mere right to use the dock, create in our minds an irresistible inference that the indenture was not intended to convey and did not convey to Francis the fee in the soil of the open dock or of any part thereof. *Judgment for the tenant.*