In the Matter of the Claim of JOHN G. VAN ETTEN, Respondent, against THE CITY OF NEW YORK, Appellant.

**Riparian rights — right to flow of water in stream is real property — municipality cannot lawfully divert flow except through exercise of right of eminent domain — when proceeding instituted under provision of statute for ascertainment of damage to property not taken will be treated as a condemnation proceeding — when owner entitled to compensation in connection with land acquired after diversion of water.**

1. The right of the owner of riparian land to the natural flow of water in a stream along the land is a corporeal hereditament and is an incident to and is annexed to the land as part and parcel of it.  It is not, and is more than, an easement.  The right is usufructuary.  It is properly classified at common law and by statute (Real Prop. Law [Cons. Laws, ch. 50], § 2), equally with the land itself as real property.

2. The claimant as the owner of lands riparian to Esopus creek owned the right, as a part of his lands, to have the waters flow along the lands and the city of New York could not lawfully and rightfully divert or destroy the flow otherwise than through the exercise of the right of eminent domain as authorized by and pursuant to the Constitution of the state, the statutes authorizing the project, or the relevant sections §§ 3357–3384) of the Code of Civil Procedure.

3. In eminent domain he from whom the title of the condemned property is taken is entitled to the compensation.  The time of the acquisition of title by the condemnor is the time at which the right to

compensation and its amount accrued and the then grantor *in invitum* is the owner of and the party entitled to be paid the compensation. It is the divesting of title which entitled to the compensation and he from whom the title is taken, and not his grantor or grantee, is to be paid the compensation awarded.

4. In virtue of the express enactments of the statute (L. 1905, ch. 724, §§ 11, 17, 26) the title to this real estate of the claimant, that is, the title to the right to the flow and use of the waters of the creek, did not pass from him, and the city did not acquire it, until the time of the filing of the oaths of the commissioners of appraisal who awarded the compensation. He is, therefore, entitled to compensation in connection with land acquired by him after the diversion of the water but before the filing of the oaths of the commissioners. (*Benedict* v. *State*, 120 N. Y. 228, distinguished.)

*Matter of Van Etten* v. *City of New York*, 184 App. Div. 414, affirmed.

(Argued February 26, 1919; decided July 15, 1919.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered September 19, 1918, which affirmed an order of Special Term confirming the report of commissioners of appraisal.

The facts, so far as material, are stated in the opinion.

*William P. Burr*, Corporation Counsel (*William McM. Speer* of counsel), for appellant. The order appealed from does not protect the city of New York and does not comply with the provisions of chapter 724 of the Laws of 1905, as amended. (*Matter of Board of Water Supply*, 208 N. Y. 69; *Matter of Board of Water Supply*, 130 App. Div. 350; 195 N. Y. 573; 229 U. S. 363; *People ex rel. Burhans* v. *City of New York*, 198 N. Y. 447; *Bishop Case*, 211 N. Y. 179.) The claimant was not entitled to damages for decrease in value prior to the date that he took title. (*People ex rel. Janes*, 206 N. Y. 581; *Grade Crossing Commission*, 209 N. Y. 139; *Matter of Walton Avenue*, 209 N. Y. 571; *People* v. *Stillings*, 134 App. Div. 480; 200 N. Y. 525; *Johnson* v. *Mayor, etc., of N. Y.*, 102 N. Y. 171; *Holloway* v. *Southmayd*, 139 N. Y. 409.)

*John G. Van Etten* for respondent.   Under the rule by which the property rights of persons have been deemed to be measured and fixed, the claimant owned the right to have the waters of the Esopus creek flow to and from his land unobstructed and in a natural manner; which right was an incident of property in the land, as parcel, and as a corporeal right, and the claimant could not be divested of such right except by adverse possession, voluntary grant or condemnation under the power of eminent domain.   (*Stokol* v. *Singers,* 8 El. & Bl. 31; *Johnson* v. *Jordan,* 2 Metc. 234; *Scriber* v. *Smith,* 100 N. Y. 471; *Gallagher* v. *Kingston Water Co.,* 25 App. Div. 82; 164 N. Y. 602; *City of Syracuse* v. *Stacey,* 86 Hun, 441; *Chenango Bridge Co.* y. *Paige,* 83 N. Y. 178; *Fulton L., H. & P. Co.* v. *State,* 200 N. Y. 400; *Hall* v. *Sterling Iron & R. Co.,* 148 N. Y. 432; *N. Y. Co.* v. *Rotherly,* 132 N. Y. 293; *County of Erie* v. *Fridenberg,* 221 N. Y. 389; *Gilzinger* v. *S. Water Co.,* 66 Hun, 173; 142 N. Y. 633.)   The claim of the petitioner, after having taken and diverted the waters of the Esopus creek, and assumed to have acquired the claimant's vested rights therein, that the rights and remedies of the claimant are limited by the provision of section 42, chapter 724, Laws 1905, as amended, is not tenable.   (*People ex rel. du Pont Powder Co.* v. *Galvin,* 164 App. Div. 920; *Matter of Bd. of Water Supply,* 211 N. Y. 174; *People ex rel. Burhans* v. *City of New York,* 198 N. Y. 439; *People ex rel. Savings Bank* v. *Butler,* 147 N. Y. 164; *People ex rel. Huntington* v. *Crenan,* 141 N. Y. 239; *Matter of Livingston,* 121 N. Y. 94; *N. P. Assn.* v. *Lloyd,* 167 N. Y. 431.)

COLLIN, J.   This proceeding was instituted under chapter seven hundred and twenty-four of the Laws of 1905 and the amending act, chapter three hundred and fourteen of the Laws of 1906.   A repetition of our former statements concerning the purposes and contents of the statute (*Matter of Board of Water Supply,* 211 N. Y.

174; *People ex rel. Burhans* v. *City of New York,* 198 N. Y. 439) is unnecessary.

On September 9, 1913, the closing of the dam impounding the waters of Esopus creek — a non-navigable, freshwater stream — stopped the flow of its waters below the dam entirely, except as the city of New York chose to release water at the dam. The claimant, Van Etten, owned lands riparian to the creek about five miles below the dam. The flow of the waters of the creek along those lands was, of course, destroyed by the dam and its closing. In this proceeding he sought and was awarded compensation for the destruction. A part of the lands was conveyed to the claimant by one Oliver, March 31, 1915, that is, subsequent to the closing of the dam and the consequent destruction of the flow. The record presents the question whether Van Etten or his predecessor in title was entitled to the compensation to be awarded as to such part of the lands.

The city of New York could lawfully take or acquire the right of the riparian owner to the natural and usual flow of the waters of Esopus creek only through and by means of the exercise of the right of eminent domain. Until the city took or acquired the title to the right any interference by the city with it was a wrong and a trespass. The right of the owner of riparian land to the natural flow of water in a stream along the land is a corporeal hereditament and is an incident to and is annexed to the land as part and parcel of it. It is not, and is more than, an easement. The right is usufructuary. It is properly classified at common law, equally with the land itself, as real property. The statute in question recognizes and adopts the classification in the definition: " The term real estate as used in this act shall be construed to signify and embrace all uplands, lands under water, the waters of any lake, pond or stream, all water rights or privileges, and any and all easements and incorporeal hereditaments and every estate, interest and

right, legal and equitable, in land or water.  *   *   *."
(Laws of 1905, chapter 724, section 25.)  The Real
Property Law recognizes it.  (Cons. Laws, chapter 50,
section 2.)  The claimant as the owner of lands riparian
to Esopus creek owned the right, as a part of his real
estate, as a part of his lands, to have the waters flow along
the lands and the city of New York could not take or
acquire that right — could not lawfully and rightfully
divert or destroy the flow — otherwise than through the
exercise of the right of eminent domain as authorized by
and pursuant to the Constitution of the state, the statutes
in question, or the relevant sections (Sections 3357–3384)
of the Code of Civil Procedure   (*Gardner* v. *Village of
Newburgh,* 2 Johns. Ch. 162; *Scriver* v. *Smith,* 100 N. Y.
471; *Smith* v. *City of Rochester,* 92 N. Y. 463; *Johnson* v.
*Jordan,* 2 Metc. 234, 239; *Tracy Development Co.* v. *Becker,*
212 N. Y. 488; Farnham, Waters & Water Rights,
sections 155e, 462, 472, 486, 489, 503, 512, 731; *Kaukauna
Water Power Co.* v. *Green Bay, etc., Canal,* 142 U. S. 254;
*Irving* v. *Borough of Media,* 194 Penn. St. 648.)   The
case of *Benedict* v. *State of New York* (120 N. Y. 228),
to which our attention has been called, holds that where
a dam for canal purposes was intended to be a permanent
structure for the purpose of increasing the depth of water
in the river the resulting overflow upon the plaintiff's
land is the taking of a permanent easement by the state
for the use of the canal.  The permanent easement
was created when the dam was completed and, as the claim
for damages was not presented in one year after the
construction of the dam, the claimant under the author-
izing statute waived his right to damages against the
state.  In making this decision the court held that the
claim of Benedict came within chapter 293 of the Laws of
1830 and was controlled thereby and by the Revised
Statutes (Part 1, title 9, chapter IX, sections 46 and
48).  The decision is not inconsistent or conflicting with
those we have cited.  The instant case is one of taking

and appropriating the real estate of the claimant, not of damage done by a public work constructed on other lands. (*Call* v. *County Commissioners of Middlesex*, 2 Gray, 232.)

The amended claim filed by the claimant with the appraising commissioners, as well as the original claim filed by him, was for the interference with or destruction of the natural flow of the waters of the creek. It is true that the appraising commissioners were, in form, appointed under the provisions of section forty-two of the statute. This proceeding has been conducted, however, with the assent and approval of all the parties interested as one to condemn the real property of the claimant. By common submission and consent it was deemed and conducted as an exercise of the right of eminent domain on the part of the city of New York. The parties have waived the question of jurisdiction and we must treat the proceeding as under the statute for the condemnation of real estate. Under the statute the commissioners of appraisal are to estimate and appraise " the just and equitable compensation " to be made to the owners of the real estate taken. (Sections 9, 11, 12, 13.) It is the universal rule, in support of which authorities need not be cited, that compensation in eminent domain includes the sum of the diminution in value of the part, not actually taken, of a parcel of land in part taken. Section 42 of the statute has no relation to the taking or acquisition in eminent domain of real estate by the city. The statute recognizes the clear and established distinction between " the just and equitable compensation " for real estate appropriated and the " damages " resulting from the construction or execution of the plans. The execution of the plans for a public improvement and the payment of the damages for decreases in value of the property effected by the execution of the plans is not and cannot be under the Constitution or any legal procedure or rule the exercise of eminent domain. The provisions of the statute relating to the proceedings and

report of the commissioners in condemnation and the procedure subsequent to the report are applicable in this proceeding.

In eminent domain the rule is established beyond room for discussion that he from whom the title of the condemned property is taken is entitled to the compensation. The time of the acquisition of title by the condemnor is the time at which the right to compensation and its amount accrued and the then grantor *in invitum* is the owner of and the party entitled to be paid the compensation. (*Gates* v. *DeLaMare*, 142 N. Y. 307, 314; *Matter of Mayor* [*Trinity Ave.*], 116 App. Div. 252; *Drury* v. *Midland Railroad Co.*, 127 Mass. 571, 578; *Wood* v. *Commissioners of Bridges*, 122 Mass. 394; *Ft. Wayne & S. W. Traction Co.* v. *Ft. Wayne & W. R. Co.*, 170 Ind. 49; *Matter of Nassau Electric R. R. Co.*, 173 App. Div. 253.) As to acts of the condemnor which are in their nature trespasses or which work consequential damages, as distinguished from compensation in eminent domain, the right to recover the damages flowing from them is in the owner at the time the injury is done. (*Pappenheim* v. *Met. El. R. Co.*, 128 N. Y. 436, and cases last cited.) What concerns us is the time of the passing to the city of the title of the claimant to the right to the flow and use of the waters of Esopus creek. The general and fundamental rule, in the absence of a statutory provision, is that the title does not pass until, and does pass when, the compensation is paid. The payment of the compensation and the passing of the title are, presumptively, simultaneous acts. (*Cushman* v. *Smith*, 34 Me. 247; *Cherokee Nation* v. *Southern Kansas Railway Co.*, 135 U. S. 641.) The rule may be and commonly is changed by statute. The title may, by force of a statute, become vested before payment or award of compensation if an adequate and legally certain remedy is provided whereby the owner may compel payment of his compensation. But it is the divesting of title which entitles to the compensation

and he from whom the title is taken, and not his grantor or grantee, is to be paid the compensation awarded. (*Matter of Petition of the United States*, 96 N. Y. 227; *Matter of Application of Mayor, etc., of the City of New York*, 99 N. Y. 569; *Sweet* v. *Rechel*, 159 U. S. 380.) When the state is the condemnor the statute probably need not provide the specific assurance of the payment or recovery of compensation.

The obvious scheme of the statute, briefly stated, is: Sectional maps or plans of the entire work contemplated by the act, including the sites of dams, reservoirs, aqueducts, etc., delineating and numbering in parcels all the real estate as defined by the statute, or otherwise, which the prosecution and completion of the work authorized by the act required, should be made from time to time by the engineers and employees of the board of water supply of the city of New York. (The real estate taken below the dam or dams, that is, the right to the use and natural flow of the waters of the creek, was not, in fact, so delineated.) Those maps or plans were to be approved by the board of water supply, the board of estimate and apportionment and the state water supply commission. They might be approved section by section, " and shall be so determined that one set of commissioners (in condemnation) shall not be appointed upon a section covering more property than can reasonably be passed upon and awards made by said commissioners within the limits of a year from the time of the filing of the oaths." (Section 5.) For each delineated section a set of commissioners should be appointed. The commissioners, as to a section shall take and file oaths. " *On filing the said oath, in the manner provided in the previous section, the city of New York shall be and become seized in fee of all those parcels of real estate which are on the maps,*" etc. (Section 11.) The compensation awarded shall be " with lawful interest thereon, *from the date of filing the oath* and certified copies thereof as by

this act required." (Section 17.) " *Upon the filing of the oath* of the commissioners of appraisal " the contracts, specifications and plans for construction may be approved and the construction entered upon. (Section 26.) *Until the oath is filed* the city or its representatives can enter upon or interfere with any land or water or water rights for the purposes only of making surveys or investigations and posting notices. (Section 4.) Interference with the real estate in any other manner or for any other purpose was unlawful and a trespass and in no sense constituted the taking. (*Village of St. Johnsville* v. *Smith*, 184 N. Y. 341.)

In virtue of the express enactments of the statute the title to this real estate of the claimant, that is, the title to the right to the flow and use of the waters of the creek, did not pass from him, and the city did not acquire it, until the time of the filing of the oaths of the commissioners of appraisal who awarded the compensation. Their oaths were filed September 9, .1915. The conveyance from Oliver to Van Etten was, as we have stated, made March 31, 1915. The closing of the dam did not divest Oliver of the title he then had. The statute otherwise expressly provided. So long as Oliver held the title he could convey it, and Van Etten, from whom the title was taken by the city of New York, was entitled to the compensation. (*Brinckerhoff* v. *Wemple*, 1 Wend. 470; *Matter of City of Syracuse*, 224 N. Y. 201; *Village of St. Johnsville* v. *Smith*, 184 N. Y. 341; *Matter of Thompson*, 89 Hun, 32; affirmed, 148 N. Y. 743; *Oliver* v. *P. V. & C. Railway Co.*, 131 Penn. St. 408.)

The commissioners who made the awards were appointed May 1, 1915. The order appointing them stated: " This commission shall be and act as the successor to certain commissions hereinbefore duly appointed by orders of this court and known as Business Damage Commissions Nos. 1, 2 and 3, as is more fully set forth in the petition of the Board of Water Supply of New York

dated Febry. 16, 1915." Inasmuch as the appearance and consent of the parties to proceed before the commissioners were essential to give them jurisdiction in this proceeding to condemn the real estate actually taken, the passing of the title was the time of the filing of the oaths of the commissioners who thus acquired jurisdiction and made the award. The claimant was entitled to the compensation for the taking of the title to the riparian right incident to and a part of the tract conveyed by Oliver. The award was properly made.

This proceeding has no relation to injuries, if any, to the lands of claimant, caused by the city by means of excessive and abnormal quantities of water discharged into Esopus creek or its channels.

The order should be affirmed, with costs

HOGAN, J. (dissenting). Chapter 723, Laws of 1905, provided for the organization of a state water commission and defined its powers and duties. By the terms of the statute no municipal corporation or board, commission, etc., representing such municipality should after the passage of the act have power to acquire, take or condemn lands for any new or additional sources of water supply until it had first submitted the maps and profiles therefor to said commission and obtained the approval of the commission to the same after a public hearing thereon. The maps to be exhibited were required to show the land to be acquired. The profiles were to show the sites and areas of proposed reservoirs and other works, aqueduct lines, etc., and be accompanied by a plan or scheme to determine and provide for the payment of proper compensation for any and all damages to persons or property whether direct or indirect which will result from the acquiring of said lands and the execution of said plans.

Immediately following the enactment of chapter 723, the legislature enacted chapter 724 of the Laws of 1905,

which authorized the city of New York through the
board of water supply created by the statute in connection
with the other boards and officers mentioned therein
to acquire uplands, lands under water, the waters of any
lake, pond or stream, all water rights or privileges, and
any and all easements and hereditaments and every
estate, interest and right, legal and equitable, in land or
water, including terms for years and liens thereon by
way of judgment, mortgages or otherwise, for the con-
struction of reservoirs, dams, aqueducts and other
appurtenances for the purpose of an additional supply
of pure and wholesome water for the city of New York.
Power was conferred upon the city to exercise the right
of eminent domain, provision made for the appointment
of commissioners of appraisal to ascertain and appraise
the compensation to be made to the owners or persons
interested in the real estate, etc., to be taken; and upon
the filing of the oaths of commissioners the parcels of
real estate, etc., on the maps to be taken and occupied
by the city were to become vested in fee in the city.

The comptroller of the city was authorized and directed
to raise from time to time by the issuance of corporate
stock such sums of money as should be sufficient to pay
for any real estate acquired or the extinguishment of
any right, title or interest therein and all damages
appraised to persons interested therein.

In a review of the legislation relating to the subject
under discussion (*Matter of Board of Water Supply*, 211
N. Y. 174, 180, 181) we pointed out that the board of
water supply provided for under the statute (Laws of
1905, chapter 724) after the necessary preliminary steps
had been taken by it, made application to the state water
supply commission for its approval under the statute
creating the latter named commission (Laws of 1905,
chapter 723) and while such application was pending
certain sections of chapter 724, Laws of 1905, were
amended by chapter 314, Laws of 1906, amongst which

was section 42, important to be considered in this case, which section as amended reads:

" Section 42. The owner of any real estate not taken by virtue of this act and chapter seven hundred and twenty-three of the laws of nineteen hundred and five or of any established business on the first day of June, nineteen hundred and five, and situate in the counties of Ulster, Albany or Greene, directly or indirectly decreased in value by reason of the acquiring of land by the city of New York for an additional water supply or by reason of the execution of any plans for such additional water supply by the city of New York under the provisions of this act and chapter seven hundred and twenty-three of the laws of nineteen hundred and five, their heirs, assigns or personal representatives shall have a right to damages for such decrease in value. The board of water supply of the city of New York may agree with such persons as to the amount of such damages, and if such agreement cannot be made such damages, if any, shall be determined in the manner herein provided for the ascertaining and determining the value of real estate taken under the provisions of this act.   *   *   * "

We also quoted from the decision of the state water supply commission dated May 14th, 1906, which made reference to the amendments of the statute in 1906 wherein the report stated: " The amendments were prepared after consideration of the evidence produced and arguments made by the attorneys representing the objectors upon the hearing. Also after a personal inspection of some of the territory proposed to be taken and the study of the laws of the state of Massachusetts and the method adopted by the Metropolitan water board of that state having similar questions and the commission believes that the law as now amended makes fair and equitable provisions for the determination and payment of any and all damages both direct and indirect which may result from the execution of said plans, and

that it also protects New York from paying exorbitant and improper damages."

The plan of the board of water supply having been approved by the state water supply commission, the city - proceeded to and did acquire title to lands and streams in the Catskill Mountains and erected a reservoir and dam known as the Ashokan Reservoir which is an artificial body of water fourteen square miles in area, created by the construction of a masonry dam across the Esopus creek and a series of dikes which impounds waters at places where otherwise they would escape into adjoining valleys. The reservoir is composed of two separate parts called east and west basins. The west basin is fed entirely by Esopus creek, the adjoining water stream. Gate houses are constructed in such a way that water can be discharged into and through the aqueduct from either or both reservoirs to the city of New York. The reservoirs will impound one hundred twenty-seven billion gallons of water. The capacity of the aqueduct to carry the water to the city of New York is five hundred million gallons per day.

Work was commenced by the city in the year 1906. At that time the total area of watershed above the lands of claimant involved in the proceeding was 284 square miles.

September 9th, 1913, the opening or gate in the masonry dam was permanently closed and as found by the commissioners since that date no water has been allowed to flow through said structure and down Esopus creek except as the engineers of the city .in charge have let water out. The effect of closing the gate or opening in the dam was to reduce the drainage area of watershed between the dam and the lands of claimant to about twenty-eight square miles.

Since December 27th, 1915, water from the reservoir has been delivered to the inhabitants of the city of New York.

On November 18th, 1913, the claimant filed with the board of water supply a claim which was dated October 21, 1913, wherein he alleged ownership of lands described in five several deeds to which reference was made for a more particular description of the premises and that he was also seized in fee of other lands adjoining the premises and used in connection therewith; the construction by the city of the dam and reservoir on Esopus creek for the purpose of impounding the water of said creek and diverting the same to the city of New York; that the city in September, 1913, wrongfully and unlawfully impounded the waters of the creek above the premises of claimant for the purpose of filling the reservoir and diverting the waters therefrom to the city or elsewhere and intends to permanently impound the flow of water and divert the same and by reason of such diversion and interference with the natural flow of Esopus creek through and along the premises of claimant he had and will sustain damage in the sum of fifteen thousand dollars which he demanded the city pay to him.

The board of water supply in February, 1915, represented by the corporation counsel of the city filed with the Supreme Court a duly verified petition from which it appears that former commissioners had been appointed for hearing of claims under section 42 of the statute. The first commission appointed in 1910 was continued until sometime in the year 1914. A second commission was appointed May 4th, 1912, and its term extended in 1913 and 1914. A third commission was appointed March 1st, 1913, the two last named commissions existing at the time of the filing of the petition mentioned in February, 1915. Due notice having been given of the filing of said petition on May 1st, 1915, an order was made appointing the commissioners who heard the present claim as a commission to ascertain and determine the damages if any that any one may be entitled to by reason of section 42, chapter 724 of the Laws of 1905,

as amended by chapter 314, Laws of 1906 (hereinbefore quoted), provided an agreement cannot be had with the board of water supply.

On December 15th, 1915, the claimant presented an amended claim practically in the language of the original claim presented in November, 1913, save that lands described in seven separate conveyances referred to therein were included in addition to the lands described in the five several deeds mentioned in the original claim and that the damages demanded were increased in amount.

The commissioners reported that the claimant Van Etten is the owner of certain lands in the town of Marbletown, Ulster county, located some miles below the reservoir and dam, which lands consist of about 359 acres of lowland and about 450 acres of upland. The lowlands lie between Esopus creek and a highway known as the Mountain road and are comparatively level. The uplands lie to the north of the Mountain road and rise to a considerable height above the lowlands. The lowlands have a frontage upon the Esopus creek of about 7,500 feet and consist largely of agricultural lands, in the main under a high state of cultivation. At the time of the hearing of this claim the lowlands were used as a dairy farm.

The lands were acquired by the claimant by twelve separate conveyances, each conveyance save one being a full covenant deed. The real estate in six of the several conveyances was acquired by him subsequent to June 1, 1905, the date specified in section 42 of the statute of 1905 and the amendment thereto authorizing the enterprise by the city. One conveyance of land was made to claimant March 31, 1915, some eighteen months subsequent to the act of the city in closing the opening or gate in the dam.

The city of New York has acquired under the statute

and by reason of the execution of its plans now practically completed, the right to impound and divert all the waters of Esopus creek at the point where the Ashokan dam was erected by means of which it has exercised possession and control of said waters, and by reason of which owners of land directly or indirectly decreased in value, if any, by reason of the impounding and diverting of all the waters of Esopus creek were entitled to damages therefor; claimant was entitled to be compensated for any decrease in the value of his land by reason of the impounding and diversion of all the waters of said creek at said dam and dikes and for all time, so that the determination and award of this commission shall be a continuing and complete bar against him, his heirs and assigns forever. The amount of the award made to claimant was $8,650, and included damages to all lands described in the twelve conveyances set out in the amended claim. The order of the Special Term in all respects ratified, approved and confirmed the report in so far as affects the claim of Mr. Van Etten, provided that the comptroller of the city of New York pay to claimant the amount of the award for the impounding and diversion of all the waters of Esopus creek and for all time to come which award will be a continuing bar against claimant, his heirs and assigns forever, with interest on the amount of the award from the time the right to impound and divert said waters was acquired by the city of New York, to wit, the date of the filing of the oath of the commissioners, September 10th, 1915. A further provision was " A brief description of said real estate affected by the impounding and diversion of the waters of Esopus Creek and Beaverskill by the city of New York, as aforesaid, is as follows:" then follows a reference to the twelve separate deeds referred to in the amended claim.

The project of the city of New York to provide a supply of pure and wholesome water for the inhabitants

of that city was one of magnitude. In *Matter of Board of Water Supply* (211 N. Y. 174–182) we made particular reference to the extent of the undertaking, and the facts found by the commissioners in the present case furnish additional information on the subject. A consummation of the enterprise involved an unusual expenditure of money by the city, consequently was of interest to the taxpayers of the city, likewise it involved the rights of owners of lands and water rights in the Catskill mountains and the valley adjacent. A review of the statutes enacted in the years 1905, 1906, indicates that the legislature had a keen appreciation of the project and intended to afford ample protection for the city and likewise to guard the varied interests which might in anywise be affected by the undertaking. Publicity and opportunity for every interest to be heard before the state water supply commission and the board of water supply predominated in each statute.

That the end to be attained under the statute of 1905 as amended in 1906 was a public purpose; that a certain definite and adequate method of ascertaining the amount of damages sustained by any person thereunder and due provision made for the payment of compensation is not controverted.

Conflict of opinion prevails between counsel for the respective parties as well as between members of the court as to the particular provision of the statute applicable to a hearing of the claim at bar. Upon the hearing before the commissioners, and upon the argument of the appeal, counsel for claimant asserted that the claim was one for condemnation of real estate. Counsel for the city insisted that the commissioners having been appointed under section 42 of the statute were without jurisdiction to hear the claim as an ordinary condemnation proceeding, but were limited to hearing and considering it as one to recover damages for land not taken, but depreciated in value by reason of the execution of the plan of the city.

In *Matter of Board of Water Supply* (211 N. Y. 174, 183) we said: " The statute contemplates a proceeding to condemn the fee of the real property required by the city (L. 1905, ch. 724, § 7), and a proceeding to determine the damages arising from a decrease in the value of an established business (L. 1905, ch. 724, § 42, and L. 1906, ch. 314) (the subject for determination in that case). These proceedings are separate and distinct although there seems to be no reason why a commission cannot be named with authority to hear claims presented under both statutes. If commissioners had been appointed to hear claimants of both classes it would have resulted in    *    *    * economy of time    *    *    * but where one commission is appointed solely for the purpose of hearing claims for damages by reason of the city taking the fee of real property it is not legal error if a claimant refuses to submit his claim for damages arising from a decrease in the value of an established business to such commission    *    *    *."

Applying the principle of that decision to the present case, the fact is apparent that if, as contended for by claimant, the proceeding was one for condemnation of real estate the city could not be compelled to try the claim before commissioners appointed to hear claims arising under section 42 of the statute. The claimant and the city were at liberty to consent to a hearing before commissioners appointed under either provision of the law and in that event would be bound by any determination made. The city maintaining its position that the claim was one to recover damages for land not taken, but depreciated in value by reason of the execution of the plan of the city, and claimant having proceeded to trial before a commission appointed solely to hear such claims, cannot now be heard to assert that the claim was one arising under the earlier sections of the statute regulating the acquiring of land in the usual condemnation proceeding.

Under section 3 of chapter 723, Laws of 1905, the

State Water Commission Act, the city was required to accompany its application to that body for approval with not only maps showing lands to be acquired and profiles showing the sites and areas of proposed reservoirs and other works, but also a plan or scheme to determine and provide for the payment of the proper compensation for any and all damages to persons or property whether direct or indirect which will result from the acquiring of said land appearing on the maps filed *and the execution of said plans.* I have heretofore called attention to the fact that section 42 of the statute of 1905 was amended in 1906 before approval by the state water supply commission of the maps, plans, etc., of the city, and to the report of that commission in its approval of the plan of the city especially with reference to section 42, as amended, which was mentioned in the report as being a fair and equitable provision for the payment of any and all damages both direct and indirect which may result from the " execution of the plan of the city." All of which has important bearing upon the intention of the legislature in the amendment of section 42 of the statute.

The character and extent of the work constructed by the city prior to September 9, 1913, indicates that the city had long theretofore acquired title to the lands, water rights, etc., necessary for the reservoir dam, aqueduct, etc., which has been delineated on the maps and profiles filed and approved, and had proceeded with the construction work at that time to a point where it was possible to impound and divert the water of Esopus creek to the city of New York. The report of the commissioners does not disclose, neither is it claimed, that prior to that time the city had interfered with the natural and ordinary flow of water in the channel of the creek below the point where the dam was erected. The plan of the city down to September 9, 1913, though in process of execution had not been executed. True, the dam had been constructed as a part of the plan, but it did not

interfere with the flow of water of Esopus creek and could not do so until the opening in the dam was closed, and the city enabled to impound the water in the reservoir. Upon the closing of the dam, the city asserted its right under legislative authority as a part of the plan to impound the waters of Esopus creek and convey the same to the city for a public purpose, or, if it so desired, to discharge from time to time water through the channel of the creek as it was wont to run therein. In the latter event, the owners below would be entitled to use the same as theretofore utilized, but they could not demand of or require the city to discharge water therein. The city would not, however, be entitled to discharge an excess of water down the creek causing damage to lands, buildings, crops, etc., or by its negligence permit such damage to be sustained. The physical closing of the opening of the dam and assertion of such right by the city was operative as an execution of its plan on September 9th, 1913 (*People ex rel. Janes* v. *Dickey*, 206 N. Y. 581; *Matter of Grade Crossing, Buffalo*, 209 N. Y. 139; *Shepard* v. *Manhattan Ry. Co.*, 169 N. Y. 160), and riparian owners on Esopus creek below the dam were relegated for relief to the remedy prescribed by the statute authorizing the enterprise.

Prior to the execution of the plan and the assertion of the right of the city by the physical act of a completion thereof, riparian owners on Esopus creek below the dam though not the owners of the water of said creek which in the absence of the dam would naturally flow through the channel of the creek (*Sweet* v. *City of Syracuse*, 129 N. Y. 316, 335) were possessed of a right to have the water flow unobstructed in the natural channel as an incident of property in their lands. Such right while frequently termed an easement is distinguished from an easement in that it is a corporeal right. (*Scriver* v. *Smith*, 100 N. Y. 471; *Tracy Development Company* v. *Becker*, 212 N. Y. 488, 489.)

By reason of the execution of the plan of the city, riparian owners of the creek below were divested of a corporeal right in their lands by reason of an appropriation of the same by the city. (*Scriver* v. *Smith,* 100 N. Y. 471, 478 and cases cited; *Benedict* v. *State,* 120 N. Y. 228.)

A casual reading of the *Benedict* case may lead one to conclude that the decision is inapplicable as an authority here. I construe the decision as directly controlling in this case, unless mere form is to be substituted for substance. In that case the state erected a permanent dam for the purpose of increasing the depth of water in the Black river. Land of Benedict was overflowed for which he claimed damages. In the course of the opinion it was said " the overflow upon the plaintiff's (claimant's) land was the taking of a permanent easement." The term easement as thus used has given rise to the question of application of that decision to the present case. That the expression was not used in the opinion as determining the interest the state acquired in the land of claimant clearly appears from the opinion which states " The statute provides that the claim must be presented ' within one year after such premises shall have been taken or *permanently appropriated,*' and we are of the opinion that the state *appropriated* the land when the dam was completed and the water in the river raised." As was said by this court in *Scriver* v. *Smith* (*supra*) corporeal rights may be called easements but they differ from easements in that they do not have origin in grant or prescription presupposing a grant.

The execution of the plan of the city of necessity included the right to divert or control the flow of water in Esopus creek. It did not contemplate the acquisition of real estate along the creek many miles. The plan and the statute recognized that the lands of riparian owners not acquired by the city would be depreciated in value by reason of the execution of the plan of the city by reason of the superior right of the city to divert and

control the water of Esopus creek; therefore, the statute, section 42, made provision for compensation in such case, to " be determined in the manner herein provided for the ascertaining and determining the value of real estate taken under the provisions of this act."

The position of the claimant in the case is consistent with the views expressed.   In this claim dated October 21st, 1913, some six weeks after the closing of the dam, he sought damages to five parcels of land, as he alleged, for the unlawful act of the city in the construction of the dam and reservoir, the impounding of the water of the creek in September, 1913, and the intention of the city to permanently divert the water to the city of New York, thereby depriving him of his right to have the flow of water in the creek continue.   The amended claim filed just previous to the hearing before the commissioners contains the same allegations and sought to recover damages, not to five parcels of land, but to twelve parcels, to one of which he acquired title in 1915.

The pleadings having alleged that the act of the city was wrongful and unlawful it is rather difficult to comprehend how the claim was one for real estate taken under the provisions of the statute preceding section 42. Upon the hearing of the claim for the purpose of establishing damages, and as bearing upon a depreciation in the value of his land, he offered evidence of the value of his land as a whole in September, 1913, before the dam was closed on September 9th, and the value of the same thereafter.   The execution of the plan of the city of necessity included the right to impound and divert the water in whole or in part, as the demands of the inhabitants of the city of New York required.   Thus the primary purpose of placing a gate in the dam.   The acquisition of such right did not require a description of the channel of the creek or the flow line in times of freshets by metes and bounds; such lines were well defined.   Any damage to the rights of riparian owners could as well be determined

under section 42 of the statute as through a condemnation proceeding. The measure of damages was the same in both cases.

With certain modifications certain of the findings of the commissioners would cover my conclusions which are as follows:

The city of New York has duly acquired and appropriated under acts of the legislature of the state of New York, and by reason of the execution of its plans for an additional supply of water for the inhabitants of the city of New York as in the statute provided, the right to impound and divert all the waters of Esopus creek at or near Brown's station in the town of Olive, Ulster county, N. Y., at which point the city has erected a dam known as the Ashokan dam, by means of which it has since the 9th day of September, 1913, when the plan of the city was executed and by reason thereof and under the statute exercised a right of possession and control of said waters and appropriated the rights of lower riparian owners on the stream below, which corporeal rights were annexed to the land of the claimant and should be described in the report and order of confirmation.

That the claimant is entitled to compensation for the depreciation in the value of his land by reason of the execution of the plans by the city, which shall for all time be a continuing and complete bar against said owner, his, her or their heirs and assigns forever, with interest on the sum awarded from September 9th, 1913.

The appropriation by the city and its rights under the statute became complete upon the execution of the plan, and by the physical act of the city in closing the dam and assumption of its rights thereby on September 9th, 1913, and a claim thereunder arose on that day as to any land then owned by the claimant, but does not embrace lands thereafter acquired.

Claimant cannot be compelled to accept compensation for or be barred of a right to recover damages which

may at some time in the future be caused by the act of the city in a discharge of an excessive quantity of water down the channel of Esopus creek, resulting in damage to land, buildings or crops, or arise by reason of negligence on the part of the city. Such construction of the statute would give rise to speculation and was not contemplated therein.

The fact that the city may not take the entire waters of Esopus creek from some years cannot be considered here. It has a right by reason of the execution of the plan to take all the waters at once or whenever it pleases and for such right riparian owners below the dam are entitled to compensation for depreciation in the value of land by reason of the execution of the plan of the city and thereafter are forever barred from any future claim therefor.

The order of confirmation should be specific as to the rights and interests acquired by the city to the end that the public records relating to real estate in the county of Ulster will disclose the rights of the city and give public notice to future purchasers of any land therein.

For error in allowance of compensation to claimant for lands conveyed to him in 1915, the amount of which is not ascertainable from the record so as to permit a modification, the order of the Appellate Division should be reversed and a new hearing had to determine the compensation to which claimant is entitled in accordance with this opinion.

CHASE, CUDDEBACK and McLAUGHLIN, JJ., concur with COLLIN, J., for affirmance; HISCOCK, Ch. J., and CRANE, J., concur with HOGAN, J., for reversal.

Judgment affirmed.