(10 App. Div. 598.)

ARCHER et al. v. ECKERSON et al.

(Supreme Court, Appellate Division, Second Department.    December 8, 1896.)

1. CONTRACT—PAYMENT OF CONSIDERATION—"GRANT."
    Under a contract by which plaintiffs (riparian owners) agreed to sell and convey to defendant all their right, title, and interest in and to lands under the waters of a river (application for a grant of which, by the board of commissioners of the land office, is recited to have been made by plaintiffs, and to be then pending), and also all right, title, and interest which plaintiffs may acquire to such land, by grant or otherwise, under or by reason of the pending application, and to execute to defendant a good and sufficient deed for conveying to him the lands which shall be granted to plaintiffs as soon as said grant shall be made to them,—defendant agreeing to pay part of the consideration on execution of the contract, the balance at and after delivery of the deed, and to make the payments if "said grant" is made to a railroad company, which had also applied for a grant of the land,—defendant is not required to make the payments subsequent to the execution of the contract, both applications for a grant having been denied, though the railroad company acquires the land by condemnation

2. SAME—RIGHT TO PAYMENT MADE.
    Plaintiffs are, however, entitled to retain the payment made at execution of the contract, notwithstanding failure to obtain a grant which would entitle them to subsequent payments; defendant obtaining by the contract a right to a conveyance of such riparian rights as plaintiffs had at the time, and there being no assurance that a grant would be obtained from the state.

Appeal from special term, Westchester county.

Action by Charles D. Archer and another, executors of Michael A. Archer, deceased, against James Eckerson and another.    From a judgment for defendants, plaintiffs appeal.    Reversed in part.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

E. A. Brewster, for appellants.
Ralph E. Prime, for respondents.

BRADLEY, J.    The action was brought to recover an installment of $1,000, alleged to be due to the plaintiffs upon a contract made between the parties, of date June 7, 1890, whereby the plaintiffs, in consideration of $6,500, agreed to sell and convey to the defendants

all their right, title, and interest in and to lands under the waters of the Hudson river (the application for a grant of which, by the board of commissioners of the land office, having been made by the plaintiffs with Brewster J. Allison, was then pending before the board), "and also all right, title, and interest which the" plaintiffs "may acquire to such land, by grant or otherwise, under or by reason of the pending application, and to execute to the" defendants "a good and sufficient deed for conveying to them the lands which shall be granted to the" plaintiffs and Allison, as soon as the said grant is made to them. The payments to be made by the defendants were $1,000 at or before the execution of the contract, the receipt whereof was thereby acknowledged; $1,000 when the deed should be delivered; and the residue in later specified installments. The first payment was made by the defendants. Before bringing the action, the plaintiffs tendered a deed, and demanded the payment of the second installment, and, on refusal of the defendants to pay it, seek to recover it. The defense is founded on the fact that the plaintiffs had not obtained any grant of the land under water from the commissioners of the land office. It seems that, prior to the time such contract was entered into, an agreement was made between the defendants and the New York & New Jersey Extension Railroad Company, whereby it was recited that the company proposed to extend its railroad to the Hudson river, and had recently applied to the land office commissioners for a grant of certain lands under water to be used in connection with its terminus at the river; that the defendants had acquired, or were about to acquire, certain land to the west of "said lands" under water, with the intention of erecting brickyards and for dock facilities; that it was for the interest of both parties to that agreement that the track of the company should not cross the tracks which the defendants proposed to lay for their use; and that it was to the interest of the company that the brickyards should be erected. Thereupon the defendants, among other things, agreed to pay to the railroad company all the cost and expense incurred by it in connection with the acquisition of said land under water, whether the same should be acquired by grant from the state or by condemnation proceedings. The relation of the defendants with the railroad company in respect to the use of the land in question under water was such that in the first-mentioned contract they agreed that, if the "said grant" should be made to the railroad company, the payments should be made. It, evidently, was then understood that the company, as well as the plaintiffs, had made application to the commissioners of the land office for a grant of the land under water. Both applications were for grants of the same land. They were pending at the time the contract between the parties was made, and both were afterwards denied. Thereupon the railroad company instituted condemnation proceedings against the people of the state, and conducted them to successful conclusion. The land thus acquired is the same as that referred to in the complaint. The view of the trial court was that the payment and agreement to pay the residue were made in contemplation of a grant by the constituted authority of the state, and, as none had been made

to the plaintiffs, they were unable to give the requisite deed; also, that the consideration for the defendants' agreement failed, which entitled them to recover back the money paid, with interest.

As has been seen, the defendants undertook to pay in the event a grant should be made of the land to the railroad company. It is urged by the plaintiffs' counsel that the acquisition of it by the company through condemnation proceedings was a purchase in invitum, and therefore by grant. It is true that, by taking the title in that manner, the beneficial result was apparently the same to the defendants as it would have been if the company had taken by letters patent, and, equitably, the same reason would apparently seem to have arisen for payment to the plaintiffs as if title had been taken in that manner by the company. But the taking of title by the exercise of the right of eminent domain is not by "grant," in the common acceptation of the term. It imports concession. Blackstone says a grant "differs but little from a feoffment, except in the subject-matter, for the operative words therein commonly used are 'dedi et concessi,'—have given and granted." 2 Bl. Comm. 317. At common law, a grant was a conveyance applicable to incorporeal hereditaments, and not to livery of seisin. In this was the difference between a grant and feoffment. 4 Kent, Comm. 490–492. In this state the mode of conveyance by feoffment and livery is abolished, and the name of conveyance by bargain and sale is absorbed in the term "grant." 1 Rev. St. p. 738, §§ 136–138.

The railroad company did not take the title by grant in fact, nor by the grant contemplated by the parties; and therefore the condition precedent to the defendants' undertaking to make payments subsequent to the time of the execution of the contract was not performed. But the fact that the company had obtained the title, and the plaintiffs could not obtain it, was not necessarily such a failure of consideration as to enable the defendants to recover back the money they had paid. The plaintiffs' testator, at the time of his death, was a riparian owner of the land bordering upon that in question under water. By his will, the plaintiffs took title to his real estate, as trustees; and, by statute, the commissioners of the land office were authorized to grant the land under water to them. Laws 1890, c. 275. As against everybody other than the state, the plaintiffs, as such trustees, had beneficial rights and interest as riparian owners, extending beyond the dry land, for the purpose of access to the water, and to construct piers and wharves for their own use, etc. Yates v. Milwaukee, 10 Wall. 497; Rumsey v. Railroad Co., 133 N. Y. 79, 30 N. E. 654. The situation and all the circumstances were known to the defendants when they made the contract and the preliminary payment; and it was contemplated by their agreement with the company that the latter might have occasion to resort to condemnation proceedings to get title to the land. The plaintiffs did not undertake to assure the conveyance by them of title to the defendants, nor, by the express terms of the contract, agree to get, or that the company would obtain, a grant from the state. Their right then existing as riparian owners very likely furnished a reason for the nonexpression of any condition upon which the

payment was made. The defendants took, by the contract, the right to a conveyance of such riparian interest or right as the plaintiffs then had and should thereafter acquire in the property, and for which their application was then pending. This appears by the terms of the contract. The principle of the case of Murray v. Richards, 1 Wend. 58, is not deemed applicable to the payment made in the present case. In that case the transfer of property was made a condition precedent to payment, and, as the subject-matter of the contract was destroyed, so that the performance could not be had, the vendee was entitled to recover back the money paid by him. In the view taken, the defendants were not entitled to recover the money they had paid to the plaintiffs.

The judgment should be reversed, and new trial granted, costs to abide the event, unless the defendants stipulate to exclude from the judgment the recovery of $1,300, for the money so paid; and in that event the judgment be so modified, and, as modified, affirmed, without costs of this appeal to either party. All concur.

---

(11 App. Div. 16.)

### WOODS v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. December 15, 1896.)

1. TRIAL—MISLEADING INSTRUCTIONS—EXCEPTION.
    A party who fears that he may be prejudiced by a misunderstanding of part of the charge should request more explicit instructions; and, if he neglects this, an exception to that part of the charge is unavailing.
2. MASTER AND SERVANT—DEFECTIVE APPLIANCES—CONDITION AFTER ACCIDENT.
    Evidence of the condition of the brakes of a car 20 minutes after an accident to an employé claimed to have been caused by the defective adjustment of the brakes, is admissible, where there is no proof of any alteration in that time.
3. SAME—DUTY TO KEEP APPLIANCES IN ORDER.
    A railroad company is liable for injuries to an employé in a collision caused by defective adjustment of the brakes of a car, where it is the duty of the inspectors in the yards to see that the brakes are in order, and the train hands have no duty with the adjustment of them.
    Bradley, J., dissenting.

Appeal from trial term, Queens county.