THE WATER POWER AND CONTROL COMMISSION, Appellant, *v.* THE NIAGARA FALLS POWER COMPANY, Respondent.

Fourth Department, October 1, 1941.

*John J. Bennett, Jr., Attorney-General* [*Henry Epstein, Solicitor General, Timothy F. Cohan* and *Jack Goodman Assistant Attorneys-General,* of counsel], for the appellant.

*LeBoeuf, Machold & Lamb* [*Joseph M. Proskauer, Randall J. LeBoeuf, Jr., Warren Tubbs* and *J. Alvin Van Bergh* of counsel], for the respondent.

*James C. Bonbright,* Chairman of The Power Authority of the State of New York [*Charles Poletti, George Stephens Reed, Maurice P. Davidson, Jesse Freidin* and *Harvey T. Mann* of counsel], as *amicus curiæ.*

McCURN, J. Plaintiff appeals from a judgment entered upon findings made after trial at Special Term. The action is brought under section 634 of article 14 of the Conservation Law to enjoin the defendant from the use of the waters of the Niagara river by reason of the refusal of the defendant to apply for a license and to pay a rental for the use of said waters. Plaintiff also sought a declaratory judgment.

The judgment dismisses that part of the complaint which seeks an injunction and declares certain rights between the parties, from all of which plaintiff appeals.

It is conceded by all parties that the Niagara is a public navigable river and the Special Term so found. Under a treaty with Canada the maximum amount of water which may be diverted on the United States side of the river is 20,000 cubic feet per second. The defendant is diverting that amount.

The defendant corporation came into existence by virtue of chapter 596 of the Laws of 1918. It was the result of a consolidation at that time of three constituent corporations. The act of incorporation provided that the defendant company should pay a rental upon all waters used by it in excess of 15,100 cubic feet per second. Such a rental is now being paid. (See *Niagara Falls Power Co.* v. *Water Power & Control Commission,* 267 N. Y. 265.) It is the contention of the plaintiff here that by virtue of section 634 of article 14 of the Conservation Law it is authorized to notify the defendant to desist from using or diverting the remaining 15,100 cubic feet per second without obtaining a license therefor, and that upon failure or refusal of the defendant to obtain such a license, it may enjoin the defendant from further use or diversion of the waters.

The defendant contends that article 14 of the Conservation Law does not by its terms embrace its use of the Niagara waters, or if it does that the statute is invalid and unconstitutional as to it.

Our first subject of inquiry, therefore, is whether the Legislature has authorized the Water Power and Control Commission to require the defendant to take out a license and to pay a reasonable rental for the use of the water.

Section 634 of the Conservation Law provides, in part:

" Prohibited diversions. Any person, association or corporation who, after being notified by the Commission to desist therefrom, shall, without right lawfully and previously acquired, wilfully take,

divert, draw, or make use of, for power or other commercial or manufacturing purposes, waters in which the State has a proprietary right or interest, or in the bed of which, or other real property required for the use of such waters, the State has such a proprietary right or interest, or if boundary waters of the State, the State has jurisdiction over the diversion or interference with the flow of the same for power purposes solely or concurrently with any other jurisdiction or owner of a proprietary right, without obtaining a license authorizing the same as herein provided. * * *

" The use of such water, except when the right to the use thereof has been previously lawfully acquired or is acquired by means of a written license issued pursuant to the provisions of this article, shall be *prima facie* evidence of the willfulness of the taking, drawing, diversion or use thereof and of the guilt of the person taking, diverting or making use thereof. The Commission may bring actions through the Attorney-General to enjoin violations of this section."

The preceding sections of article 14 of the Conservation Law provide that certain persons or corporations *may* apply for a license and that the Water Power and Control Commission *may* issue licenses under certain conditions.

Under section 634 of the Conservation Law it is obvious that one may divert and use waters in which the State has a proprietary interest, (1) where such person or corporation so diverting has a " right lawfully and previously acquired," or (2) where a license is issued pursuant to article 14 of the Conservation Law. The statute does not require all users of water to take out a license. It excepts those having rights " lawfully and previously acquired."

The defendant has refused to take out a license and contends that it has rights " lawfully and previously acquired."

It asserts that its said rights are (1) the common-law right of a riparian owner; (2) that the Legislature by chapter 513 of the Laws of 1892, chapter 477 of the Laws of 1893 and chapter 968 of the Laws of 1896 duly granted to it such a right of diversion; (3) that the license granted to it by the Federal Power Commission upon notice to the plaintiff constitutes such a right.

If any one of defendant's claimed rights is a right " lawfully and previously acquired " then the Water Power and Control Commission is without power to enjoin the defendant from the use of the waters. The Commission can legally act only within the authority delegated to it by the Legislature.

We examine first the defendant's claim as a riparian owner. Was respondent at the time of the enactment of article 14 of the Conservation Law possessed of the common-law right of diversion

as a riparian owner, and if so is that a right "lawfully and previously acquired" within the meaning of that statute?

The defendant is employing two means of diversion, viz., the hydraulic canal and the hydraulic tunnel. The canal at the time of the consolidation was the property of the Hydraulic Power Company of Niagara Falls. It was completed in about the year 1858 and has been in use ever since. Water is diverted through this canal upon land owned by the company above the falls and discharged from defendant's lands at a point below the falls. Property owned by the State and known as Niagara State Reservation lies between the point of diversion and the point of discharge. The Legislature by chapter 968 of the Laws of 1896 passed an act entitled: "An act confirming and defining certain riparian rights of the Niagara Falls Hydraulic Power and Manufacturing Company."

While the parties to this appeal are not in accord as to the validity, construction or effect of this statute, still all do agree that it at least constitutes a consent on the part of the State as a lower riparian owner to the diversion by defendant's predecessor through this canal. The statute has never been repealed. Without passing upon any other or greater claims asserted for it, we regard it as being at least a consent on the part of the State as a riparian owner to the diversion of waters by the defendant's predecessors through the canal.

The hydraulic tunnel, formerly the property of the Niagara Falls Power Company, one of defendant's predecessors, has been in use since about 1895. As in the case of the canal the State Reservation also intervenes between the point of diversion and the point of discharge of water from the tunnel. The Legislature enacted chapter 513 of the Laws of 1892 entitled, "An act relating to the Niagara Falls Power Company," and without passing upon any other question of construction raised by the parties herein, we conclude that this statute is at least a consent on the part of the State as a riparian owner to diversion around the State Reservation.

The defendant, therefore, at the time of the enactment of article 14 of the Conservation Law (Laws of 1921, chap. 579) was possessed of common-law rights of diversion as a riparian owner. The plaintiff-appellant in fact concedes "that in the absence of any claim by the State to the use of these waters, the riparian rights of defendant and its predecessors could have justified the diversion and manufacture of power."

Our next question is whether such a right is one "lawfully and previously acquired" within the meaning of the statute. No

attempt is made in article 14 of the Conservation Law to define " right " as having any particular or special meaning. Two meanings of the word " right " appear to be possible: (1) As meaning any legal right as the word is normally used; or (2) as limited to some specific one of the large class of recognized " rights." The argument on behalf of the plaintiff adopts the latter interpretation and urges that the only " right " which confers an exemption under the statute is one derived from direct State grant or license. Such interpretation is difficult. If we adopt the first suggested meaning of " right " it is evident that the riparian owner has " rights " of a substantial nature.

Such a right has been referred to by some writers as a corporeal hereditament. It follows a grant of the land to which it attaches and may be the subject of inheritance.

" The *right* to the use of the water of a flowing stream, navigable or unnavigable, arises by mere operation of law as incident to the ownership of the bank and is a part of the estate of its owner. * * * It is a valuable property *right* which can be severed from the riparian land by grant, condemnation, relinquishment or prescription." (*United P. B. Co.* v. *Iroquois P. & P. Co.*, 226 N. Y. 38, 46.)

" The *right* of the owner of riparian land to the natural flow of water in a stream along the land is a corporeal hereditament and is an incident to and is annexed to the land as part and parcel of it. * * * The *right* is usufructuary." (*Matter of Van Etten* v. *City of New York*, 226 N. Y. 483, 486.)

The common-law right of the riparian owner to divert the waters of a navigable stream is subordinate to and subject to the paramount or " reserve " right of the State. (*People ex rel. Niagara Falls Power Co.* v. *Smith*, 70 App. Div. 543; affd., 175 N. Y. 469.)

" ' All navigable rivers in England appertain to the King.' They are arms of the sea, and the King has them because they partake of its nature. This ownership is for the public benefit, and in this country each State, as sovereign, has succeeded to the rights which the King formerly possessed in such rivers and in the soil beneath." (Gould on Waters [3d ed.], § 42, p. 100.) (See, also, *Matter of Long Sault Development Co.*, 212 N. Y. 1; *Niagara Falls Power Co.* v. *Water Power & Control Comm.*, 267 id. 265; *Illinois Central R. R. Co.* v. *Illinois*, 146 U. S. 387.)

The appellant does not contend that the State owns the waters of a navigable stream to the exclusion of the usual diversion rights of a riparian owner. It takes the position in its brief that " * * * the usual diversion rights of a riparian owner are subject to the paramount right of the State to the flow. When the

State does not choose to exercise this paramount right, the usual diversion rights of the riparian owner remain in full force and effect."

If we assume, as appellant claims, that the State has a paramount right to utilize navigable waters for public use and to destroy the rights of riparian owners, if necessary, in the exercise of its paramount right, still the riparian right is not impaired until the paramount right of the State is exercised. Did the Legislature when it enacted article 14 of the Conservation Law in 1921 authorize the Water Power and Control Commission to exercise that paramount right in this particular instance? If the riparian owner's right of diversion is a " right lawfully and previously acquired " then it did not.

In this respect the " saving clause " (Laws of 1921, chap. 579, § 4, as amd. by Laws of 1922, chap. 242, § 21) strengthens our belief that there is no legislative intent " to impair any existing right of diversion and use of waters lawfully acquired by grant or otherwise." There is nothing which indicates that " grant " is to mean only a public grant from the State. The term is commonly used to denote private conveyances (Real Prop. Law, §§ 243–246; *Archer* v. *Eckerson*, 10 App. Div. 598) which were the source of defendant's riparian ownership here.

Common-law rules are to be no further abrogated than the clear import of the language used in the statute absolutely requires. (*Bertles* v. *Nunan*, 92 N. Y. 152, 158; *Transit Comm.* v. *Long Island R. R. Co.*, 253 id. 345, 355.)

In *People ex rel. Niagara Falls Power Co.* v. *Smith* (70 App. Div. 543; affd., 175 N. Y. 469) the court stated (at p. 546): " The relator, as a riparian owner and as owner of the lands under the waters of the Niagara river adjacent to its uplands from which the water is immediately taken, has the right to the use of the waters of the river for manufacturing purposes, and to divert the same for that purpose, returning them to the river, as it does, after passing over its own lands (Gould Waters [3d ed.], § 213; *People* v. *Tibbetts*, 19 N. Y. 523; *People* v. *Canal Appraisers*, 33 id. 461; *Chenango Bridge Company* v. *Paige*, 83 id. 178; *Smith* v. *City of Rochester*, 92 id. 480; *Groat* v. *Moak*, 94 id. 115; *Sweet* v. *City of Syracuse*, 129 id. 336), subject only to the paramount right of the State to utilize these waters for a public use, without compensation to such riparian owners; all riparian rights remaining unimpaired until the exercise of such paramount right by the State. This being so, it appears that the relator, as riparian owner, had the right to take waters from the Niagara river for manufacturing purposes, not interfering thereby with the navigability of the stream, such right being in no sense in the nature

of a franchise but a corporeal hereditament, not depending either upon grant or prescription."

It is our opinion that these rights, so defined and exercised openly and publicly over a long period of years, are not to be impaired without authority from the Legislature granted expressly or by necessary implication. (*People ex rel. Municipal Gas Co.* v. *Public Service Comm.*, 224 N. Y. 156, 165; *Matter of City of Syracuse* v. *Gibbs*, 283 id. 275, 283.)

We are convinced that the Legislature did not delegate to the Water Power and Control Commission the authority to exercise its paramount right in this particular instance.

Having reached the conclusion that defendant's right as a riparian owner to divert and use the waters of the Niagara, subject to the paramount right of the State is a right " lawfully and previously acquired," it is unnecessary for us to discuss the other claims made by defendant in support of its alleged rights. It is unnecessary also to discuss the constitutional question that might arise if section 634 of the Conservation Law were construed as appellant claims it should be. We hold merely as a matter of statutory construction that the Water Power and Control Commission is without authority to bring this action to enjoin the defendant.

Part of the judgment appealed from is declaratory of certain rights which obviously affect the interests of the State of New York. The State of New York is not a party here. In view of that fact and in view of our holding as above stated, that part of the judgment declaring rights between the parties should be reversed, and the judgment should be modified so as to read: The complaint is dismissed on the merits, without costs, and as so modified affirmed, without costs.

All concur, CUNNINGHAM and HARRIS, JJ., in result. Present — CROSBY, P. J., CUNNINGHAM, TAYLOR, HARRIS and McCURN, JJ.

That part of the judgment declaring the rights between the parties reversed on the law and facts and judgment modified so as to read that the complaint is dismissed on the merits and as modified affirmed, without costs of this appeal to either party. Certain findings of fact disapproved and reversed.